FRANK J. SALVI, JR., Plaintiff-Appellee and Appellant, v. MONTGOMERY WARD & COMPANY, INCORPORATED, Defendant-Appellant (The Coleman Company, Inc., Defendant-Appellee).

First District (4th Division)   No. 85—10

Opinion filed January 30, 1986.—Rehearing denied March 13, 1986.

James J. Kupka, of Chicago, for appellant.

Rabens, Formusa & Glassman, Ltd., of Chicago (S. Joseph Formusa, of counsel), for appellee Frank J. Salvi, Jr.

Lord, Bissell & Brook, of Chicago (C. Roy Peterson and Hugh C. Griffin, of counsel), for appellee The Coleman Company, Inc.

PRESIDING JUSTICE LINN delivered the opinion of the court:

Plaintiff, Frank J. Salvi, Jr., instituted this action seeking damages from defendants Montgomery Ward & Company, Incorporated (Wards), and The Coleman Company, Inc. (Coleman), for an eye injury he sustained in an accident involving an air gun sold by Wards and manufactured by Coleman. In his amended complaint, Frank alleges that Wards was negligent in selling a Coleman air gun to John Salvi, Frank's 14-year-old brother, and that such negligence proximately caused his injury. In addition, Frank claims that the Coleman air gun was defectively designed and unreasonably dangerous.

Following a trial on the merits, the jury found that Wards was negligent and awarded Frank $570,000 for the injury he suffered.[1] With regard to Coleman, however, the jury found that the Coleman air gun was not unreasonably dangerous and therefore ruled against Frank and in favor of Coleman.

Frank and Wards now bring this appeal.

Frank claims that the trial court committed prejudicial error in two respects: (1) by permitting Coleman to introduce evidence demonstrating that it manufactured 459,000 air guns with the same type of safety as the gun involved in Frank's injury and that the use of those air guns failed to produce a single injury claim other than that asserted by Frank; and (2) by tendering a jury instruction which stated that a manufacturer is not required to provide a warning of a particular danger unless that manufacturer knew or should have known of the danger.

Wards, on the other hand, contends that the trial court erred when it: (1) permitted evidence to be introduced regarding a remedial change in policy which Wards instituted subsequent to the alleged act of negligence; (2) denied Wards' post-trial motions wherein Wards argued that it owed no legally cognizable duty to Frank and that Wards' acts were not the proximate cause of Frank's injury; and (3) refused to give a jury instruction regarding Wards' compliance with section 2 of "An Act *** regulating the sale *** of air rifles ***" (Ill. Rev. Stat. 1977, ch. 38, par. 82—2).

We affirm.

---

[1]That amount was subsequently reduced to $546,000 to reflect funds Frank received from another party prior to trial. The extent of the award is not an issue in this appeal.

BACKGROUND

In January of 1978, John Salvi, the plaintiff's brother (hereinafter referred to as John), purchased a Model 1377 American Classic Single Shot .177-caliber pump action pistol from a Wards retail outlet in Deerfield. At the time of the purchase, a salesman from Wards instructed John on the basic operation of the air gun. The salesman did not ask John for any identification nor did he question John as to whether John had his parents' permission to purchase the gun. John was 14 years old when he purchased the gun. Included with the gun was a package of "BBs," an owner's manual, and lubricating oil.

When John got home, he glanced over the owner's manual. He never fully read the manual, feeling such was not necessary in light of the salesman's demonstration of the gun's operation. As he became more familiar with the gun, John learned, through trial and error, that pulling the trigger was the only way for him to tell if the safety of the gun was activated. If the gun fired, the safety was off, and if the gun did not fire, the safety was on.

John kept the gun for approximately 13 months. During that time, he fired the gun over 200 times. At the conclusion of that 13-month period, John decided to sell the gun. To facilitate that sale, on February 26, 1979, John decided to clean the gun in the family's kitchen.

In the Salvi home, the kitchen is adjacent to the family den. The kitchen and den are attached by a large open doorway. On February 26, 1979, Frank Salvi, the plaintiff, was watching television in the den when his brother John brought the air gun into the kitchen to clean. As John cleaned the bottom of the gun, he inadvertently pulled the pump mechanism on the gun several times. John failed to check if the safety was on nor did he check to see if the gun was loaded.

John was about 15 to 20 feet away from Frank at the time of the accident. John was looking down at the gun while he cleaned it and the gun's barrel, unbeknownst to John, was pointed in Frank's direction. During the cleaning, John pulled the trigger and the gun discharged a BB which struck Frank in the eye.

The BB struck Frank in the upper part of the eye. The BB penetrated the eyelid, cutting the globe of the eye, passed through the sclera, through the choriod, and finally through the retina. X rays disclosed that the BB lodged in the center of the eye globe in the vitreous. Because of severe hemorrhaging, the eye lens became cataract. In addition, the vitreous, and pieces of retina fell out of the

eye itself.

As a result of the accident, Frank lost the sight in his damaged eye. He now wears a prosthetic eye fitted into the eye socket.

The Coleman gun which John purchased came in a multicolored box. On the side panel of that box was a warning printed in red bold type that read:

"CAUTION: This air gun is not a toy and may cause death or serious injury, particularly to the eye, if misused or used carelessly. Read all instructions before using.

This air gun requires adult supervision if the user is under 16 years old and should not be used by anyone under 8 years of age. This air gun will shoot a BB/pellet up to a distance of 400 yards (370 meters). Purchaser and user have the responsibility to conform to all laws concerning the use and ownership of this air gun."

There existed no published standards for air gun design at the time Coleman manufactured the gun purchased by John. However, the gun, including the design of the safety, complied with subsequently enacted standards promulgated in late 1978 by the American Society of Testing Materials (ASTM).

At trial, Frank Salvi's case was two-fold: (1) a negligence action against Wards; and (2) a products liability case against Coleman.

In his action against Wards, Frank claims that Wards was negligent for selling a Coleman air gun to John Salvi, Frank's 14-year-old brother. During his case in chief against Wards, Frank first called David Teachman pursuant to section 2—1102 of the Illinois Code of Civil Procedure. Teachman is an assistant corporate retail operating manager for Wards. Teachman is responsible for reviewing sales policies and procedures adhered to by Wards' retail outlets. Teachman testified that with respect to firearms (as opposed to air guns), Wards has always adhered to Federal guidelines restricting their sale. Those guidelines forbid the sale of firearms to persons under the age of 18.

Teachman also testified that it is Wards' firearms buyer who is usually most familiar with the industry and who, initially, is responsible for formulating the guidelines regulating their sale. Teachman noted that when the firearms buyer learns of a sales guideline, either from the firearms manufacturer or from a government agency, the buyer was then responsible for circulating a copy of that guideline to various departments for comments and revisions. Ultimately, the finalized version of the guideline would be distributed, upon Teachman's approval, to Wards' retail outlets.

Teachman also testified that in 1978, when John Salvi purchased the Coleman air gun from Wards, the only guideline adhered to by Wards (with respect to the sale of air guns) was that of an Illinois statute (Ill. Rev. Stat. 1977, ch. 38, par. 82—2) which prohibited the sale of air guns to children under the age of 13.

Frank next called Jasper Butera, Wards' firearms buyer from 1977 to 1982. Butera testified that in the December 1977 Wards catalog, Wards included the following notice with respect to the sales of firearms:

"Federal law permits sale of rifles, shotguns and ammunition to persons 18 years of age or older. State and local ordinances must be followed if higher age limit is required.

Bring proof of age such as driver's license or State ID card as required in Illinois and New Jersey."

Butera also testified, as did Teachman, that in 1978, Wards' only guideline with respect to the sale of air guns was a prohibition against the sale of air guns to children under the age of 13.

During Butera's testimony, Frank introduced into evidence, over Wards' objection, two letters which Butera had written to Wards' legal department. The two letters discussed a proposal by Butera whereby the sale of air guns would be restricted to only those persons above the age of 18. Under this proposed change, therefore, the sale of air guns would be included within Wards' general policy of restricting the sale of firearms to only those individuals above the age of 18. Specifically, the finalized version of the amended sales guideline read:

"1. When ordered, merchandise will be delivered to the Wards' Catalog store or Retail store desk nearest you in your state of residence in accordance with all local and state laws.

2. This merchandise will be sold to persons 18 years of age or older. State and local laws must be followed if a higher age limit is required.

3. Wards' conforms to all Federal, state and local laws that impose additional restrictions on gun sales. Check your local gun regulations before ordering."

Butera further stated that at the time Wards adopted the amended policy set forth above, Butera had no knowledge of the air gun sale to John Salvi. Butera testified that he suggested the amended sales policy after discovering that several other retail outlets such as Sears, Pennys, and K mart had a similar policy prohibiting the sale of air guns to children under the age of 18.

John and Frank Salvi also testified. John disclosed the series of

events beginning with his purchase of the air gun from Wards and culminating with the shooting accident on February 26, 1979. Frank described his reaction to the accident, how he was taken to the hospital, the pain he felt, the artificial eye he now wears, and the way in which the accident has altered his lifestyle.

In his action against Coleman, Frank charges that the safety on the Coleman air gun was defectively designed. It is Frank's position that the gun, and its safety, fails to contain sufficient markings warning the gun's user as to whether the safety was on or off. This lack of warning, according to Frank, renders the Coleman air gun unreasonably dangerous.

Frank's case in chief against Coleman consisted, essentially, of the testimony of Sigurds Liepins, the vice-president in charge of engineering at Coleman, and Lama Martin, a firearms expert.

Liepins testified that air guns are generally purchased for younger people and are often an individual's first firearm. These younger people, according to Liepins, are usually between 10-19 years of age. Liepins also explained that the youthful age of the average air gun user was one of the reasons Coleman adopted the red-lettered warning on the side panel of the box in which the Coleman air gun was sold. According to Liepins, the eye is the most vulnerable part of the body that a BB could injure. That fact, combined with the youthful age of the average air gun owner, prompted Coleman to place the warning on the side panel of the package.

Liepins further testified about the "cross bolt" safety, the mechanism which, when activated, stops the trigger on the Coleman air gun from firing. According to Liepins, the cross bolt safety is activated by pushing a latch near the gun's trigger from left to right. If the safety is set in the "on" position (by pushing the latch over a red groove), the trigger cannot be pulled and hence, the gun cannot be fired. However, if the safety is in the "off" position (by pushing the latch so that the red groove is visible), the trigger can be pulled and the gun can fire.

Liepins also described a second type of safety called a "lever" safety. The lever safety functions in essentially the same manner as the cross bolt except that when it is in the "on" position, the lever safety stops the gun's hammer (as opposed to the gun's trigger) from firing. In addition, Liepins stated that while some guns have the words "on" and "safe" or the letters "f" (fire) and "s" (safe) inscribed on the gun itself, the Coleman air gun involved in Frank Salvi's injury did not. Instead of having words or letters, the Coleman air gun had a red groove to indicate whether the gun's safety

was activated; if the red groove was visible, the safety was off and the gun could be fired.

Lama Martin testified as Frank's firearms expert. Martin has been a consultant in forensic ballistics for 21 years. Martin described, as did Liepins, the features and differences between the cross bolt safety and the lever safety. Martin testified that most guns with a crossbolt safety have an "S" for safety and an "F" for fire inscribed near the latch to aid the user in determining whether the safety was on or off. Martin further stated that in his opinion, the Coleman air gun involved in Frank's accident was unreasonably dangerous because the gun lacked any inscribed words or letters informing the user that the gun's safety was on. On cross-examination, however, Martin admitted that the Coleman air gun involved in Frank's accident did not malfunction in any way.

Jesse Galan was the other firearms expert who testified at trial. Galan testified on Coleman's behalf. Galan is a criminologist with the Miami police department and has published numerous articles on firearms and air guns. Galan disagreed somewhat with Martin by stating that prior to 1977, air guns with a cross bolt safety generally did not have words ("fire" or "safe") or markings ("F" or "S") indicating whether the safety was on or off. Galan also stated that he thought the air gun involved in Frank's accident was reasonably safe for a child of 15 years because it was straightforward and simple to operate. Galan agreed with Martin that the Coleman air gun involved in Frank's accident was not defective and claimed that the red groove on the Coleman air gun was sufficient to warn a user as to whether the safety was on or off.

Following the court's instructions, the jury found that Wards was negligent in selling the Coleman air gun to John Salvi and awarded Frank $570,000. The jury also found, however, that the Coleman air gun was not unreasonably dangerous and ruled, accordingly, in Coleman's favor.

OPINION

I

We first address the contentions raised by Frank Salvi. As stated previously, Frank claims the trial court committed prejudicial error when it: (1) permitted Coleman to introduce evidence showing an absence of claims; and (2) tendered an allegedly erroneous jury instruction regarding the knowledge required by a product manufacturer.

Evidence tending to show an absence of prior accidents is generally admissible only if the offering party lays a proper foundation by establishing that the absence occurred while others were using a product similar to that which caused the plaintiff's injury. (*Darrough v. White Motor Co.* (1979), 74 Ill. App. 3d 560, 393 N.E.2d 122; *Leischner v. Deere & Co.* (1984), 127 Ill. App. 3d 175, 468 N.E.2d 182.) In addition, the absence of claims must have occurred while others were using that product under conditions substantially similar to those faced by the plaintiff in the case at bar. (*Smith v. Verson Allsteel Press Co.* (1979), 74 Ill. App. 3d 818, 393 N.E.2d 598.) Thus, the offering party must establish, as a necessary foundation, that the absence of claims occurred while the same product was used under substantially the same conditions as those encountered by the plaintiff in the pending litigation.

■ In the instant case, Coleman's evidence satisfied those foundation requirements. Sigurds Liepins, the vice-president in charge of engineering at Coleman, testified that Coleman has sold 459,000 air guns with a cross bolt safety. Liepins further testified that Coleman has never received a complaint of an accident arising from the use of that cross bolt safety. The cross bolt safety on each of the 459,000 guns had the identical warning, namely the red groove, as the gun involved in Frank Salvi's injury. Thus, the absence of claims, as well as the accident in the case at bar, involved the same safety and warning system.

In addition, anyone who owned one of the 459,000 Coleman air guns having a cross bolt safety handled the gun, and its safety, in the same manner as did John Salvi. It is important to note that the cross bolt safety is part of the gun itself; it is a mechanism that each and every gun owner utilized while operating the gun. John Salvi did not use the gun, and its safety, any differently than did any of the other 459,000 air gun owners. Consequently, the conditions under which John Salvi used the gun were substantially the same as those encountered by the owners of the other 459,000 Coleman air guns.

Hence, it is evident that Coleman's foundation for its absence of claims evidence sufficiently demonstrated that the same product (air guns having a cross bolt safety), was used under substantially the same conditions. Accordingly, we believe that the trial court correctly admitted Coleman's absence of claims evidence.

We wish to stress that the foundation presented by Coleman cannot be compared to that laid by the defendant in *Walker v. Trico* (7th Cir. 1973), 487 F.2d 595. The central issue in *Walker* was

whether a "limit switch" was placed in such a position as to render a blow-mold machine unreasonably dangerous. It was the plaintiff's theory, in *Walker*, that if the limit switch could be accidently activated, the blow-mold machine was defectively designed. The *Walker* court reversed a trial court's decision in which the trial court permitted the defendant to introduce evidence of an absence of prior claims. 487 F.2d 595, 599.

In *Walker*, however, the defendant failed to present any evidence regarding how many blow-mold machines actually had the limit switch complained of by the plaintiff. Indeed, the only evidence proffered was that which demonstrated that the defendant had sold 45 blow-mold machines and had received no complaints from their usage. Whether those 45 machines had the same type of limit switch as that which allegedly caused injury to the plaintiff, however, was never disclosed. Consequently, in *Walker*, an inadequate foundation was laid for the defendant failed to demonstrate that the product allegedly causing the plaintiff's injury, the limit switch, was part of each of the 45 machines about which the defendant had received no complaints.

In the present case, to the contrary, Coleman's evidence regarding the absence of prior claims involved only those air guns which had a cross-bolt safety—the exact mechanism complained of by Frank Salvi. Indeed, all of the 459,000 guns of which Coleman has received no prior accident claims contained the same cross bolt safety which Frank now asserts to be defectively designed. Thus, unlike the defendant in *Walker*, Coleman's absence of claims evidence involved the same mechanism alleged to have caused the plaintiff's injury. Consequently, because Coleman's foundation demonstrated that the air gun which has produced no prior claims is the same as that involved in the instant case, and because the guns in both circumstances were used under substantially the same conditions, we believe Coleman's foundation was sufficient and that its absence of claims evidence was properly admitted.

## II

Frank also claims that the trial court erred in giving the following jury instruction:

> "A product manufacturer is not required to give warnings or instructions concerning a specific danger of the product unless the manufacturer knew or should have known of the danger at the time that the product left its control."

We disagree. In *Woodill v. Parke Davis & Co.* (1980), 79 Ill. 2d 26,

402 N.E.2d 194, our supreme court held that where failure to warn is the basis for a strict liability charge, it is necessary for the plaintiff to prove that the defendant knew or should have known of the danger causing the injury.

In the present case, Frank claims that the Coleman air gun was unreasonably dangerous because of an insufficient warning near the gun's safety. According to Frank, the words "fire" and "safe" or the letters "F" and "S" should have been inscribed on the Coleman air gun's handle. This lack of warning allegedly confused John Salvi as to whether the safety was on or off and thereby contributed to Frank Salvi's injury.

Frank's charge falls into the *Woodill* doctrine for it asserts, essentially, that Coleman should have placed a better warning on the gun regarding the gun's safety. Thus, under *Woodill*, knowledge of the danger on the part of Coleman was necessary. Accordingly, the trial court was correct in giving the instruction outlined above. See also *Nelson v. Hydraulic Press Manufacturing Co.* (1980), 84 Ill. App. 3d 41, 404 N.E.2d 1013.

In sum, we find that the trial court correctly admitted the evidence of Coleman's absence of claims. In addition, we believe that the trial court properly instructed the jury as to the standard applicable in a strict-liability failure-to-warn case.

## III

■ We now address the errors asserted by Wards.

Wards first argues that the trial court erred when it permitted Frank Salvi to introduce two letters written by Butera, Wards' firearms purchaser, to Wards' legal department. The letters discussed a change in Wards' air gun sales policy whereby anyone under the age of 18 would be prohibited from purchasing an air gun from Wards. Prior to this change in policy, Wards had restricted the sale of air guns to only those children over the age of 13 (thereby complying with Ill. Rev. Stat. 1975, ch. 38, par. 82—2). Wards claims that the Butera letters constituted evidence of a subsequent remedial measure and should have, therefore, been ruled inadmissible by the trial court. We agree.

It has long been the law in Illinois that evidence of subsequent remedial measures is inadmissible to prove negligence on a defendant's part. (*Hodges v. Percival* (1890), 132 Ill. 53, 23 N.E. 423.) The rationale for this rule is two-fold: (1) correction of an unsafe condition (or policy as in the present case), should not be deterred by the possibility that such an act will constitute an admission of negli-

gence; and (2) a post-occurrence change is insufficiently probative of prior negligence for later carefulness does not necessarily imply prior neglect. *Lundy v. Whiting Corp.* (1981), 93 Ill. App. 3d 244, 417 N.E.2d 154.

In the instant case, John Salvi purchased the Coleman air gun from Wards during January of 1978. It is this sale which constitutes the basis of Frank Salvi's negligence action against Wards. Three months later, in April of 1978, Butera, through his two letters to Wards' legal department, initiated a change in Wards' policy which, if it had existed in January of 1978, would have precluded John Salvi from purchasing the Coleman air gun. Thus, Wards instituted a safer air gun sales policy subsequent to the alleged acts of negligence. Consequently, the Butera letters fall within the rule excluding evidence of subsequent remedial measures and, therefore, the trial court erred when it admitted the Butera letters into evidence.

While we find that the trial court erred in admitting the Butera letters, it does not necessarily follow that the trial court's error prejudiced Wards to such an extent that a reversal is warranted. An error is generally not reversible unless it is demonstrated that the error was substantially prejudicial and thereby unduly affected the outcome of the trial. (*Holsapple v. Country Mutual Insurance Co.* (1983), 112 Ill. App. 3d 512, 445 N.E.2d 909.) Moreover, the party asserting error must provide a clear showing of prejudice for a court of review will not presume, absent such a showing, that an error affected the outcome of the trial. *Kyowski v. Burns* (1979), 70 Ill. App. 3d 1009, 388 N.E.2d 770.

In the case at bar, Wards has failed to make a clear showing of how the trial court's error was unduly prejudicial. Although it is true the trial court erred in permitting the jury to learn of Wards' change in policy, we do not believe, based upon a review of the record, that the introduction of that evidence affected the outcome of the trial. In this regard, we note the existence of other evidence which could have been sufficient to support the jury's verdict; specifically, the warning on the side of the air gun box (discussed more fully below), the fact that other retail outlets similar to Wards adhered to a policy prohibiting the sale of air guns to minors under 18, and the fact that the burden placed upon Wards to change its sales policy does not outweigh the probability as well as the extent of the injuries occurring as a result of that policy. We also note that Frank's counsel did not argue, during closing argument, that Wards' change of policy constituted an admission of prior negligence. Under

these circumstances, we do not believe that the outcome of the trial was unduly affected by the trial court's error.

## IV

■ Wards' second assignment of error concerns the trial court's denial of Wards' post-trial motion. In its motion, Wards argued: (1) that it owed no legal duty to Frank Salvi; and (2) that even if Wards did owe such a duty, nevertheless, Wards' negligence was not the proximate cause of Frank Salvi's injuries.

Addressing first the duty issue, it has long been the rule in Illinois that whether a duty exists is a question of law for the court to decide. (*Zimmermann v. Netemeyer* (1984), 122 Ill. App. 3d 1042, 462 N.E.2d 502; *Mieher v. Brown* (1973), 54 Ill. 2d 539, 301 N.E.2d 307.) Generally speaking, a duty is "an obligation requiring one to conform to a certain standard of conduct for the protection of another against an unreasonable risk." (*Barnes v. Washington* (1973), 56 Ill. 2d 22, 26, 305 N.E.2d 535.) The factors to consider in determining whether a duty exists include: (1) whether the occurrence or accident was foreseeable; (2) the likelihood of injury; (3) the magnitude of the burden of guarding against that injury from occurring; and (4) the consequences of placing that burden upon the defendant. *Lance v. Senior* (1967), 36 Ill. 2d 516, 518, 224 N.E.2d 231.

We first consider whether it was foreseeable that Wards' negligence would result in Frank Salvi's injury. More specifically, the issue is whether, after an air gun has been sold to a 14-year-old child, it is foreseeable that the child would be negligent in the handling of that air gun. We believe that it was.

■ ■ In general, an accident is foreseeable when an ordinarily prudent person would, at the time of an act, anticipate that the commission of that act would, as a natural and probable consequence, cause the accident to occur. (*Porter v. City of Decatur* (1974), 16 Ill. App. 3d 1031, 307 N.E.2d 440.) In the case at bar, the foreseeability of an injury resulting from John Salvi's negligent use of the Coleman air gun is best demonstrated by the warning placed on the very package in which the gun was sold. That warning revealed, in no uncertain terms, that the Coleman air gun was not the type of instrument that a child under the age of 16 should possess absent adult supervision. Specifically, the warning stated:

> "THIS AIR GUN IS NOT A TOY AND MAY CAUSE DEATH OR SERIOUS INJURY, PARTICULARLY TO THE EYE IF MISUSED OR USED CARELESSLY. *** THIS AIR GUN REQUIRES ADULT SUPERVISION IF THE

USER IS UNDER 16 YEARS OLD ***."
When read as a whole, this warning itself comes close to predicting the exact scenario in which Frank Salvi was injured. Indeed, the manufacturer, via the warning, explained that a child under 16 could, through the negligent use of the air gun, cause injury to another's eye. Consequently, when Wards sold the gun to John Salvi, it gave a 14-year-old minor an instrument which, according to the manufacturer's *own* warning, could, if used carelessly, cause injury to Frank Salvi's eye. Under these circumstances, we believe that when Wards sold the gun to John Salvi, a reasonably prudent person would have foreseen that someone such as Frank Salvi could, through John's careless handling of the gun, suffer an injury to his eye.

The same warning also underscores why we believe that the second consideration of whether a duty exists, namely, the likelihood of an injury, is present in the instant case. It is our opinion, and the record demonstrates likewise, that Coleman placed the warning on its package for the precise purpose of informing retailers, consumers, and users of the Coleman air gun that a child of John Salvi's age should not handle the gun without adult supervision. Adult supervision is recommended to insure that a child does not use the gun carelessly so as to cause injury to another. Consequently, should a retail store, such as Wards, sell the Coleman air gun to a minor of John Salvi's age, the likelihood of an injury resulting from that minor's careless use of that air gun is, in our view, sufficient to place a duty on Wards to restrict the sale of that gun.

The last two factors to consider in determining whether a duty exists consist of: (1) the magnitude of the burden of guarding against the likelihood of injury; and (2) the consequences of placing that burden upon the defendant.

In the present case, Wards had, prior to 1977, a policy with regard to the sale of firearms (other than air guns) which prohibited the sale of those firearms to minors under the age of 18. Wards' personnel were required, pursuant to that sales policy, to ask for identification before a firearm was sold. Jasper Butera, Wards' firearms buyer, admitted that the policy regarding the sale of firearms could easily be applied to the sale of air guns. Thus, the magnitude of the burden placed on Wards to prevent minors of John Salvi's age from purchasing air guns is not great. Likewise, we believe, and Wards is unable to demonstrate to the contrary, that Wards would suffer no adverse consequences via the extra burden of having sales

personnel refrain from selling air guns to minors of John Salvi's age.

In sum, we find that the harm suffered by Frank Salvi was a reasonably foreseeable result of Wards' act of placing an air gun in the hands of a minor. We also find that the various policy considerations outlined above also favor our ruling that Wards was under a duty to refrain from selling air guns to minors. Accordingly, we rule that Wards did have a duty to adopt a sales policy which prohibited air guns from being sold to minors such as John Salvi.

## V

■■ Wards also urges us to find that its negligence was not the proximate cause of Frank Salvi's injury. It is Wards' position that John Salvi's careless handling of the gun constituted an intervening, superseding cause which broke the chain of causation between Wards' negligence and Frank Salvi's injury.

The question of proximate cause, in a negligence case, is generally one for the jury to decide. (*Ozment v. Lance* (1982), 107 Ill. App. 3d 348, 437 N.E.2d 939.) A jury's findings will be upheld unless those findings are contrary to the manifest weight of the evidence. (*Jones v. Chicago Transit Authority* (1960), 23 Ill. App. 2d 504, 163 N.E.2d 546.) With regard to a third party's acts, the subsequent act of a third party does not break the causal connection between a defendant's negligence and a plaintiff's injury where that subsequent act was probable and foreseeable. (*Thiessen v. Wabash R.R. Co.* (1963), 41 Ill. App. 2d 238, 190 N.E.2d 498.) Rather, to escape liability, a defendant must demonstrate that the third party's act was unforeseeable as a matter of law. *Bak v. Burlington Northern, Inc.* (1981), 93 Ill. App. 3d 269, 417 N.E.2d 546.

■■ In the case at bar, the evidence presented at trial sufficiently supports the jury's finding that Wards' liability was not cut off by John Salvi's mishandling of the Coleman air gun. In this regard, we believe the jury could find that if Wards sold an air gun to a minor such as John Salvi, it was foreseeable and probable that John Salvi would be negligent in the use of the air gun and thereby cause injury to Frank Salvi. In addition, Wards has failed to demonstrate why it was unforeseeable, as a matter of law, that a minor such as John Salvi would be careless in the handling of the Coleman air gun. Consequently, we find that John Salvi's mishandling of the Coleman air gun was not sufficient to break the causal chain between Wards' negligence and Frank Salvi's injury.

## VI

Wards' final contention is that the trial court erred in refusing to give an instruction to the jury informing them of Wards' compliance with the Illinois criminal law governing the sale of air guns. In 1977, when Wards sold the air gun to John Salvi, there existed in Illinois a statute (Ill. Rev. Stat. 1977, ch. 38, par. 82—2) that made it a criminal offense for a retailer to sell an air gun to a child under the age of 13. It is Wards' position that it complied with that statute and, therefore, the jury should have been instructed to consider such compliance in determining the issue of Wards' negligence.

We disagree. If the jury were instructed as to every law which a defendant complied with, the jury would become confused as to the real issues of the case. In a civil case, a criminal statute may be used to demonstrate the standard of care where the statute was: (1) meant to protect against the type of injury in question; and (2) where the injured party is within the class sought to be protected. (*Burke v. Zwick* (1939), 299 Ill. App. 558, 20 N.E.2d 912.) In the present case, neither Frank nor John Salvi were under the age of 13 at the time that John Salvi purchased the gun. Therefore, they were not members of the class sought to be protected by the statute. Accordingly, the trial court properly refused to tender Wards' requested instruction.

In sum, we believe that the evidence presented at trial supports the jury's finding that Wards' negligence proximately caused Frank Salvi's injury. In addition, we find that the trial court correctly refused to tender Wards' requested instruction regarding its compliance with section 2 of "An Act *** regulating the sale *** of air rifles ***" (Ill. Rev. Stat. 1977, ch. 38, par. 82—2).

Accordingly, for the reasons set forth above, we affirm the jury's finding that Wards' negligence proximately caused Frank Salvi's injury. We also affirm the jury's finding that the Coleman air gun was not unreasonably dangerous.

Affirmed.

JIGANTI and McMORROW, JJ., concur.