**AUGUST, BISHOP & MEIER, INC., and First National Insurance Co., Plaintiffs,**

v.

**The PREMIUM LINK, LTD., Defendant.**

**No. 90 C 431.**

United States District Court, N.D. Illinois, E.D.

May 15, 1990.

Nicholas F. Esposito, Terence M. Heuel, Mark A. Schramm, Esposito & Heuel, Chicago, Ill., for plaintiffs.

Gilbert W. Gordon, Robert Marks, Marks, Marks and Kaplan, Ltd., Chicago, Ill., for defendant.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

August, Bishop & Meier, Inc. ("ABM") is an Illinois-based corporation which is in the business of developing promotional products. This business carries some risks; as many prudent companies do, ABM purchased insurance to protect itself from losses directly associated with its line of work. ABM's insurer was First National Insurance Company, a Washington corporation whose principal place of business is in Seattle, Washington.

In 1987, the Burger King Corporation, a well-known purveyor of American cuisine (it sells "fast food") contracted with ABM to promote Burger King's "Kid's Meal Pack." ABM solicited designs for premiums which it intended to use in the promotion from various vendors of premiums, including The Premium Link, Ltd. Premium Link is a New Jersey-based corporation, engaged in the business of designing, manufacturing, and delivering promotional products. The Meal Pack promotion got Premium Link's creative juices flowing, much like fat off of a flame-broiled burger. The company came up with designs for four "Captain Power" plastic meal boxes. Premium Link proposed to ABM that it could manufacture around four million meal boxes by July 1988, if given the opportunity to do so.

Impressed with Premium Link's plan, ABM recommended it to Burger King, who in turn contracted directly with Premium Link for the boxes. Later, however, Premium Link gave Burger King and ABM a royal case of commercial indigestion by improperly designing the boxes. After discovering the problem (what it was, no one says), Premium Link told ABM that it would correct the defect. Relying on this promise, ABM advised Burger King to proceed with the Meal Plan promotion. Apparently this was a whopper of a mistake. Premium Link hadn't corrected the defect, its deliveries were behind schedule, and Burger King had to abandon the Meal Plan promotion.

Burger King blamed ABM for the promotion's failure. It charged ABM $125,000 for its losses on the deal and dismissed ABM as its agent, resulting in a loss of

business income to ABM exceeding $50,-000. ABM was able to recover $100,000 from First National under its insurance policy; now ABM and First National are after Premium Link for their losses. Count 1 of their complaint is a claim by ABM that Premium Link breached a duty to ABM "to use its best efforts in the design, manufacture, and delivery" of the Captain Power meal boxes. In Count 2, ABM charges that Premium Link misrepresented its ability to cure the problems in the design, manufacture, and delivery of the meal boxes. In Count 3, First National claims the right to recover up to $100,000 from Premium Link on the same theories put forth by ABM in Counts 1-2.*

Premium Link has moved to dismiss all of the claims against it under Rule 12(b)(6), Fed.R.Civ.Pro. While it is not clear from ABM and First National's complaint where Premium Link's torts allegedly occurred, the parties have briefed the issues raised in Premium Link's motion under the assumption that Illinois substantive law governs this case. The court will accept the parties' implicit stipulation. See *City of Clinton, Ill. v. Moffitt*, 812 F.2d 341, 342 (7th Cir. 1987) (parties may informally stipulate to applicable substantive law, within broad limits).

■ Premium Link's first argument is that it did not owe a duty to ABM under Illinois law to use its best efforts in the design, manufacture, and delivery to Burger King of the Captain Power meal boxes. While this court must construe all facts alleged in ABM's complaint in its favor, as well as draw all reasonable inferences in its favor, this court need not resolve unclear questions of law in its favor as well. This is particularly true when a plaintiff alleges the existence of a duty. It is the plaintiff's responsibility throughout the case to demonstrate his or her right to legal redress, even on a motion to dismiss. See *Bane v. Ferguson*, 890 F.2d 11, 13 (7th Cir.1989) (on a motion to dismiss, court must answer for itself whether, based on the facts alleged,

plaintiff has a right to legal relief); *Cunis v. Brennan*, 56 Ill.2d 372, 374, 308 N.E.2d 617, 618-19 (1974) (question of whether defendant owes a duty to plaintiff is one of law, and must be decided by the court); *Ferentchak v. Village of Frankfort*, 105 Ill.2d 474, 480, 86 Ill.Dec. 443, 446, 475 N.E.2d 822, 825 (1985) (same).

ABM never explains to the court what gives rise to Premium Link's alleged duty to ABM essentially to meet its contractual obligations to Burger King. Whether a court will impose a duty on a defendant towards a particular plaintiff under Illinois law depends on four factors: "(1) whether the occurrence or accident was foreseeable; (2) the likelihood of injury; (3) the magnitude of the burden of guarding against that injury from occurring; and (4) the consequence of placing that burden upon the defendant." *Salvi v. Montgomery Ward & Co.*, 140 Ill.App.3d 896, 909, 95 Ill.Dec. 173, 181, 489 N.E.2d 394, 402 (1986). See also *Harrison v. Dean Witter Reynolds, Inc.*, 715 F.Supp. 1425, 1435 (N.D.Ill.1989). Upon consideration of these factors, the court believes that the Illinois courts would not find that Premium Link owed ABM the duty alleged in Count 1. When the *Salvi* court considered the first factor, foreseeability of the accident, it focused not on general harms, but rather the one which befell the plaintiff. See *Salvi*, 140 Ill.App.3d at 909, 95 Ill.Dec. 173, 489 N.E.2d 394. The harm to ABM, as alleged, is its payment of Burger King's expenses and the loss of Burger King's business. ABM has submitted no authorities which suggest that a party should foresee when it contracts with an apparent principal (like Burger King) that if it breaches its contract with the principal, the principal's apparent agent (here, ABM) will suffer. ABM also has not alleged that Premium Link knew of the consequences to ABM if it breached its contract with Burger King. The first factor listed in *Salvi* thus weighs against imposition of the duty claimed by ABM.

---

* Since First National's rights derive from ABM's, the court will hereafter refer to only ABM when it discusses the plaintiffs' claims.

As for the second factor, the court cannot infer from the facts alleged that it was likely that Premium Link's failure to manufacture and deliver quality meal boxes to Burger King would result in injury to ABM. Continuing with the third and fourth factors, the court believes that the unforeseeable nature of the "injury" suffered by ABM essentially on account of Premium Link's breach of its contract makes it difficult for a party in Premium Link's position to guard against that injury. In addition to negotiating the central provisions of their contract—in this case, perhaps the number of meal boxes, their design, their composition, and their date of delivery—parties to agreements would have to investigate their counter-party's contracts with other persons, ascertain whether a breach of the central agreement would trigger losses under other agreements, and determine how to mitigate those risks. Were this court to impose such a duty on parties, the costs of merely transacting business would skyrocket.

The burden to Premium Link of bearing such responsibility would extend beyond whatever it would owe ABM. For example, beef producers who suffered losses as a result of Burger King's not selling more burgers to hungry kids would have a cause of action against Premium Link. Former or potential employees of Burger King who were either laid off or not hired on account of less-than-anticipated burger sales would probably join the battle too. The flaws in ABM's "for want of a nail" theory of negligence liability are patent.

■ The court thus must dismiss Count 1 for failure to state a claim under Illinois law upon which this court may grant relief. The court now turns to Count 2, ABM's claim for misrepresentation. As an initial matter, the court notes that while ABM labels Count 2 as a claim for "Misrepresentation" alone, ABM characterizes the count throughout its brief in opposition to Premium Link's motion as one for "negligent misrepresentation." Under Illinois law, a party alleging negligent misrepresentation must plead and prove (1) the defendant's duty to the plaintiff to communicate accurate information, (2) the defendant's false statement of material fact, (3) the defendant's negligence or careless in ascertaining the truth of the statement, (4) action by the plaintiff in reliance on the truth of the statement, and (5) damage to the plaintiff resulting from such reliance. See *Board of Education v. A, C & S, Inc.*, 131 Ill.2d 428, 454, 137 Ill.Dec. 635, 646, 546 N.E.2d 580, 591 (1989). The Illinois tort of negligent misrepresentation provides one of means by which a party may recover so-called "economic losses" in the Illinois courts, see *Moorman Mfg. Co. v. National Tank Co.*, 91 Ill.2d 69, 88–89, 61 Ill.Dec. 746, 755, 435 N.E.2d 443, 452 (1982), although it is uncertain whether *Moorman*'s limitation on recovery of those losses applies in this case. See *Harrison*, 715 F.Supp. at 1432–34.

■ Taking the facts alleged in ABM's complaint as true, this court cannot hold that ABM has stated a claim for negligent misrepresentation under Illinois law. ABM has alleged that Premium Link supplied it false information, as Premium Link told ABM that it would cure the defects in its products but did not. ABM allegedly relied on this information to its detriment. The company fails to allege, however, that Premium Link owed it a duty to provide it accurate information. Such a duty arises under Illinois law only when the defendant runs the risk of physical harm on account of negligent misrepresentation or is in the business of furnishing information. See *id.* 131 Ill.2d at 453–56, 137 Ill.Dec. 635, 546 N.E.2d 580. There is no allegation that anyone could have suffered physical harm on account of Premium Link's estimate of its performance, nor is there any allegation that Premium Link was in the business of furnishing such estimates. ABM itself alleges that Premium Link was in the business of "designing, manufacturing and delivering promotional products," Complaint at par. 8, which is not the sort of "information industry" whose businesses are typically exposed to liability for negligent misrepresentation. See cases cited in *A, C & S*, 131 Ill.2d at 453, 137 Ill.Dec. 635, 546 N.E.2d 580.

Even if Premium Link were in the business of providing professional estimates of its ability to meet contracts to promotional advisors, ABM has not alleged that Premium Link was negligent or careless in its prediction. There are no facts, for example, from which the court may infer that Premium Link habitually made promises that it could not keep. For this reason, Premium Link will have it its way on Count 2 of ABM's complaint. Since Count 3 is derivative of Counts 1–2, the court will dismiss Count 3 as well.

The court dismisses ABM and First National's complaint against Premium Link under Rule 12(b)(6).