Kenneth BILSKI, Plaintiff–Appellant,

v.

SCIENTIFIC ATLANTA,
Defendant–Appellee.

No. 90–3371.

United States Court of Appeals,
Seventh Circuit.

Argued May 31, 1991.

Decided May 21, 1992.

Ivan M. Rittenberg, Ira M. Kleinmuntz (argued), Rittenberg & Buffen, Chicago, Ill., for plaintiff-appellant.

Paul M. Hummel, Gil Thors, Keevers & Hittle, Jay S. Nelson, Jack L. Watson (argued), Schaffenegger, Watson & Peterson, Chicago, Ill., for defendant-appellee.

Before CUDAHY, POSNER and RIPPLE, Circuit Judges.

CUDAHY, Circuit Judge.

Kenneth Bilski appeals the denial by the district court of his motion for a judgment notwithstanding the verdict or a new trial following a jury verdict in favor of the defendant, Scientific Atlanta. We affirm.

## I.

On February 1, 1988, Kenneth Bilski was directed by his supervisor at Chicago Cable TV Company (Chicago Cable) to clean the snow and ice off Chicago Cable's satellite dishes. Chicago Cable's dishes were manufactured and installed by Scientific Atlanta (Scientific). The dishes are made of parabolic rolled steel, and each weighs approximately 1,500 pounds. Each dish is 4.5 meters across and concave in shape, with four spars made of extruded aluminum which extend across the dish and support a low noise amplifier at its center. The coupling brackets that attach the spars to the dish are made of plastic of the same color as the spars themselves. The position of each dish is fixed.

Prior to February 1, 1988, Bilski had never been called upon to clean the satellite dishes. The only instruction he was given regarding the proper method for cleaning a satellite dish was to use a broom. Bilski cleaned the first dish, which was low to the ground, without incident. For the second dish, however, Bilski had to use a ladder to reach the center. Once he had climbed up, Bilski took his left foot off the ladder and placed it on the dish, so that he was standing partly on the ladder and partly on the dish. As he was cleaning the dish in this fashion, Bilski slipped. He grabbed one of the aluminum spars to catch himself, but it broke off and he fell from the dish, fracturing his arm.

Bilski brought this suit against Scientific under a theory of strict products liability, alleging that the dish was unreasonably dangerous because Scientific gave no instructions on how to clean the dish, no warnings to stay off the dish and no warnings as to the non-weight-bearing characteristics of the spar. The jury returned a verdict for Scientific. Bilski filed a motion for judgment notwithstanding the verdict on the ground that the verdict was against the manifest weight of the evidence. He also moved for a new trial, arguing that he had been denied a fair trial by the admission of Scientific's evidence that it knew of no prior injury involving this type of dish and by the exclusion of Bilski's alleged rebuttal evidence. The district court denied both motions and entered judgment on the verdict. Bilski appeals.

## II.

In reviewing the denial of a motion for judgment notwithstanding the verdict, we apply the same standard as the district court. *Commercial Credit Equip-*

*ment Corp. v. Stamps,* 920 F.2d 1361, 1365 (7th Cir.1990). In a diversity action governed by Illinois law,[1] judgment notwithstanding the verdict is appropriate " 'only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand.' " *F.W. Hempel & Co. v. Metal World, Inc.,* 721 F.2d 610, 613 (7th Cir.1983) (quoting *Pedrick v. Peoria & Eastern R.R. Co.,* 37 Ill.2d 494, 229 N.E.2d 504, 513–14 (1967)).[2]

▪ In order to prevail in a strict liability action, a plaintiff must establish four elements:

(1) plaintiff's injury resulted from a condition of the product; (2) the condition of the product was unreasonably dangerous; (3) the condition existed when it left the seller's control; and (4) the condition was the proximate cause of the injury.

*Pierce v. Hobart Corp.,* 159 Ill.App.3d 31, 111 Ill.Dec. 110, 112, 512 N.E.2d 14, 16 (1987). Illinois courts define an "unreasonably dangerous condition" as "one which is unsafe with respect to a foreseeable use, or one which is 'objectively reasonable' to expect." *Id.* The question whether a condition is unreasonably dangerous is "generally left to the jury." *Id.*

▪ Bilski argues that he was entitled to judgment notwithstanding the verdict because the evidence, even when viewed in the light most favorable to Scientific, showed that mounting and standing upon the dish to remove snow and ice was a reasonably foreseeable use of the dish given its nature and function. He contends that the dish was unsafe for this "foreseeable use" because no warnings were given *not* to mount the dish or hold onto the aluminum spar, and because the plastic coupling bracket that attached the spar to the dish should have been made of a stronger material.

At trial, Bilski admitted that he knew that the dish was slippery when wet, and that he knew that his shoes would slip on snow and ice. (Tr. 291–92.) "One factor in determining whether a danger is unreasonable is the extent to which it would be obvious to all those who come into contact with the product." *Walker v. Maxwell City, Inc.,* 117 Ill.App.3d 571, 73 Ill.Dec. 92, 99, 453 N.E.2d 917, 924 (1983). The jury certainly could conclude that the danger of stepping on a wet, slippery, metal surface several feet above the ground was one that "would be obvious" to most people. In addition, Scientific's expert testified that it was neither necessary nor sensible for a worker to step upon an obviously slippery satellite dish in order to remove snow from it. (Tr. 105–06.) He also testified that the sole purpose of the spars was to support the low noise amplifier cone and that they were not intended to act as supports for a person. (Tr. 98.) Finally, the expert testified that he had examined the accident records kept by Scientific and had found no reports of any accidents other than Bilski's involving the type of dish at issue in this case. (Tr. 175.) We think this evidence was sufficient for the jury to conclude that Bilski's use of the satellite dish was not reasonably foreseeable and that the dish was not unreasonably dangerous.

▪ Further, we note that two of Bilski's three contentions as to defect are based on failure to warn. It is clear that under Illinois law the manufacturer of a product has no duty to warn potential users of dangers which are "common knowledge to all persons of ordinary intelligence and experience." *Estate of Dickens v. Avanti Research & Dev. Inc.,* 161 Ill. App.3d 565, 113 Ill.Dec. 399, 402, 515 N.E.2d 208, 211 (1987) (because "[t]he danger of electrocution by touching electrical wires is common knowledge to all persons of ordinary intelligence and experience," manufacturer of radio antenna had no duty to warn consumers not to touch the anten-

1. The parties appear to agree that this case is controlled by Illinois law.

2. "In diversity cases, state law governs the standard of review of a denial of a motion for judgment notwithstanding the verdict." *Fort Howard Paper Co. v. Standard Havens, Inc.,* 901 F.2d 1373, 1382 (7th Cir.1990).

na to power lines). The jury in this case could reasonably have concluded that the danger posed to Bilski in climbing up on the satellite dish was "common knowledge," and that therefore Scientific had no duty to warn him not to do it.

As for the spar, there was substantial evidence that it did not cause Bilski's injury at all. Although Bilski testified that he was merely holding onto the spar when it suddenly broke, causing him to fall, other witnesses testified that, immediately following the accident, Bilski told them that he had only grabbed the spar *after* slipping on the wet metal, in an attempt to prevent himself from falling. The jury was entitled to credit that other testimony and to conclude that the spar's inability to support an already falling body was not a condition that rendered the dish "unreasonably dangerous."

### III.

Bilski also argues that the district court erred in denying his motion for a new trial. We will reverse the denial of a motion for a new trial " 'only where the circumstances reveal a clear abuse of discretion.' " *Blumenfeld v. Stuppi*, 921 F.2d 116, 118 (7th Cir.1990) (quoting *Cook v. Hoppin*, 783 F.2d 684, 688 (7th Cir.1986)).[3] Bilski argues that he was denied a fair trial by (1) the district court's admission of Scientific's evidence that it had no knowledge of prior accidents or injuries involving the type of satellite dish at issue and (2) the court's exclusion of Bilski's evidence regarding prior falls from satellite dishes.

Under Illinois law, "[e]vidence tending to show an absence of prior accidents is generally admissible only if the offering party lays a proper foundation by establishing that the absence occurred while others were using a product similar to that which caused plaintiff's injury." *Salvi v. Montgomery Ward & Co.*, 140 Ill.App.3d 896, 95 Ill.Dec. 173, 489 N.E.2d 394 (1986). Scientific's expert testified that Scientific had sold approximately 4,000 satellite dishes

like the one on which Bilski was injured. Given the rather limited functions of a satellite dish, it is reasonable to assume that a substantial number of these 4,000 dishes were used under circumstances similar to those at Chicago Cable. The expert also testified that Scientific keeps records of injuries involving its products. This evidence established an adequate foundation for the expert's testimony regarding the lack of prior accidents. *See Leischner v. Deere & Co.*, 127 Ill.App.3d 175, 82 Ill.Dec. 120, 468 N.E.2d 182 (1984) (in case involving allegedly defective snowmobile, evidence that "there were 64,000 snowmobiles of similar design in use" and that company kept records of accidents involving its snowmobiles provided adequate foundation for expert's testimony regarding lack of prior accidents). The court did not abuse its discretion by admitting this evidence.

In response to the testimony of Scientific's expert regarding the lack of prior accidents, Bilski offered the testimony of two Chicago Cable employees who had firsthand knowledge of other falls from satellite dishes. The district court excluded this evidence on the ground that its "very slight" bearing on "the question of foreseeability of people climbing onto the dish" was "substantially outweighed ... by the possibility that it will cause confusion to the jury as to what is the true issue in this case." (Tr. 320.) As Bilski's brief to this court makes clear, the central issue in this case was whether Bilski's conduct in mounting and standing upon the wet satellite dish was a foreseeable use of the dish. The Chicago Cable employees would have testified to falls they had witnessed but which they acknowledged had not resulted in injuries and had therefore not been reported to Scientific. The district court reasonably concluded that this testimony would have little if any tendency to prove that the act of climbing up onto a wet satellite dish was foreseeable to Scientific. Bilski offers no argument as to any other purpose that this evidence could have

---

3. In a diversity action, the standard for reviewing denial of a new trial motion is determined

by federal law. *Blumenfeld,* 921 F.2d at 118.

served. The district court did not abuse its discretion in excluding this evidence.

## IV.

For the foregoing reasons, the judgment of the district court is AFFIRMED.