528

BECKY LATTY, Adm'r of the Estate of Jason A. Latty, Deceased, Plaintiff-Appellant, v. SHOLE JORDAN, Defendant-Appellee.

Third District   No. 3—92—0132

Opinion filed November 30, 1992.

Roger C. Elliott, of Elliott & McClure, of Momence (Paul F. Michel, of counsel), for appellant.

Dunn, Hayes, Condon & Marsaglia, of Morris (Robert C. Marsaglia, of counsel), for appellee.

PRESIDING JUSTICE BARRY delivered the opinion of the court:

Plaintiff Becky Latty, administrator of the estate of her deceased son, Jason Latty, appeals from summary judgment entered in favor of defendant Shole Jordan in an action for wrongful death. Defendant's negligent entrustment of a firearm to 11-year-old Joseph Newman was alleged to have been the cause of Jason''s death.

Plaintiff's primary contention on appeal is that the pleadings, answers to interrogatories, and depositions present a material issue of fact as to whether defendant entrusted his .35 caliber rifle to Joseph Newman. The trial court ruled that the depositions show conclusively that defendant entrusted the rifle only to Arthur Newman, Joseph's father, and not to Joseph. In determining whether the moving party is entitled to summary judgment, the court must construe the pleadings, depositions, affidavits, and admissions strictly against the movant and liberally in favor of the opponent. *In re Estate of Whittington* (1985), 107 Ill. 2d 169, 483 N.E.2d 210.

According to the depositions in the record on appeal, defendant had charge of a youth ministry program at a large farm home located about one mile outside of Momence. He took in children who had no parents and occasionally had senior citizens there as well, but his own residence was located in town. He called the farm house the Garden of Prayer.

In late December of 1989 defendant agreed that Arthur Newman and his son Joseph, both of Justice, Illinois, could come to the Garden of Prayer to do some hunting. They stayed in the house, sleeping with other guests in a large room called the "Blue Room." One week later the Newmans returned for another hunting trip. Joseph had his own .22 caliber rifle which was a gift on his eleventh birthday, and his father had one or two handguns. During this second visit, defendant offered his own .35 caliber rifle to Arthur Newman for use while hunting. Arthur stated that he told defendant that Joseph knew how to use a rifle and that defendant put no restrictions on the use of the rifle when he gave it to him.

On Tuesday afternoon, January 2, Arthur and Joseph engaged in target practice with the .35 caliber rifle in the yard of the Garden of Prayer house. They were joined by a neighbor, a resident of the Garden of Prayer, and Jason Latty, a 14-year-old boy who lived near defendant in Momence. Defendant was in the house during the target shooting and was said to have heard Arthur say how well Joseph shot with the rifle. In his deposition, defendant stated that he knew Joseph was shooting the rifle during target practice.

On Thursday, January 4, Jason Latty was again at the Garden of Prayer, having been given a ride there by defendant. About 1 p.m. on that day, Arthur, Joseph and Jason went hunting for deer and rabbit. Before going off to hunt Arthur told defendant that the three of them were going to go hunting. Joseph had defendant's .35 caliber rifle while Jason had one of the handguns belonging to the Newmans. Arthur took the two boys to a tree platform where they were to watch for an animal to shoot while Arthur went to a different stand "within hollering dis-

tance" of the boys. After a while the boys got cold and returned to the house without telling Arthur.

According to Joseph, they first went to the Blue Room, where he disarmed the handgun and put it under a mattress. He then put the loaded rifle under a sleeping bag. He said that they always hid the guns to keep them out of the reach of smaller children who were sometimes in the house. Joseph and Jason then went to the kitchen for something to eat and to watch TV with some of the other people. Defendant saw the boys in the kitchen and spoke to them but then, without inquiring about their guns, he returned to his work in another room where he was hanging a door.

After a time, Joseph and Jason went back upstairs and began to play with the two guns by pointing them at each other in imitation of TV. Then they realized they should not be playing with the guns. As Joseph attempted to "de-cock" the rifle, his finger slipped and the gun fired, striking Jason. The shot was fatal.

Jason was taken to St. Mary's Hospital in Kankakee. In the emergency room waiting room, defendant met Jason's parents. He told them that he would not have allowed the Newmans to be at his place if he had known they came to hunt because he runs a house of God. He also said that he does not allow guns at his house. These statements were contradicted by defendant's subsequent assertions in his deposition.

The trial court determined that defendant entrusted his .35 caliber rifle to Arthur Newman, apparently without considering whether the evidence, viewed in the light most favorable to plaintiff, could give rise to an inference that defendant impliedly entrusted the rifle to Joseph as well.

This court has previously stated:

> "Inferences may be drawn from the facts which are not in dispute, and if a fair-minded person could draw different inferences from these facts, then a triable issue exists. [Citation.] Summary judgment should be granted only when the legal and factual right to it is clear and free from any doubt." *Carroll v. City of Galesburg* (1988), 177 Ill. App. 3d 814, 816-17, 532 N.E.2d 1048.

■■■ Negligent entrustment has been said to consist of entrusting a dangerous article to another whom the lender knows, or should know, is likely to use it in a manner involving an unreasonable risk of harm to others. (*Teter v. Clemens* (1986), 112 Ill. 2d 252, 492 N.E.2d 1340.) Furthermore, in *Kosrow v. Acker* (1989), 188 Ill. App. 3d 778, 544 N.E.2d 804, the court held that entrustment includes giving express or implied permission and that implied permission exists where an inference or circumstance arises out of a course of conduct or a relationship between

the parties whereby there is mutual acquiescence or lack of objection in a manner that generally would indicate permission.

■ In the case before us, the evidence allows a reasonable inference to be drawn that defendant knew of and acquiesced in the use of his .35 caliber rifle by 11-year-old Joseph on the day of the accident. Such acquiescence could support a finding of implied permission. Obviously, other inferences would also be reasonable and, therefore, a material issue of fact exists which requires a jury determination. The trial court erred in its ruling.

Although the trial court did not reach the question of negligence, we must determine whether a material issue of fact is presented as to the negligence of defendant's conduct in allowing his rifle to be used by Joseph. In *Teter v. Clemens*, the court quoted with approval from Comment *b* to section 308 of the Restatement (Second) of Torts (1965), which says in part:

> "[Negligence by permitting another to use a thing] has its most frequent application where the third person is a member of a class which is notoriously likely to misuse the thing which the actor permits him to use. Thus, it is negligent to place loaded firearms or poisons within reach of young children."

In the case before us, defendant's conduct went far beyond placing loaded guns within a child's reach; he permitted Joseph to have possession of a .35 caliber rifle for hunting outdoors and to return to the house with the rifle without providing any supervision of the boy on the premises.

Joseph's father, Arthur Newman, testified that Joseph had been instructed in gun safety but that he still had to be supervised because a child forgets to do things. (*Cf. Salvi v. Montgomery Ward & Co.* (1986), 140 Ill. App. 3d 896, 489 N.E.2d 394.) The events of January 4, 1990, demonstrate the tragic truth of Arthur's statement. We conclude that the circumstances of this case could reasonably support a finding of negligence on the part of defendant.

For the foregoing reasons, we reverse the summary judgment entered in the circuit court of Kankakee County and remand for further proceedings consistent with this opinion.

Reversed and remanded.

SLATER and HAASE, JJ., concur.