POLSKY, Appellants, v. LEVINE, and others, Respondents.†

*No. 772 (1974). Submitted on briefs April 12, 1976.—*
*Decided June 30, 1976.*
(Also reported in 243 N. W. 2d 503.)

† Motion for rehearing denied, with costs, on August 23, 1976.

548

For the appellants the cause was submitted on the brief of *Michael H. Gillick* and *Habush, Gillick, Habush, Davis & Murphy* of Milwaukee.

For the respondent, Dan Levine, there was a brief by *O'Melia, Melby, Smith & Schiek, S. C.* of Rhinelander, for respondents, James Peckarsky, Jewish Community Center of Milwaukee and St. Paul Fire & Marine Insurance Company, there was a brief by *Korth, Rodd, Sommer & Mouw, S. C.* of Rhinelander.

DAY, J. This case arose out of a water-skiing accident and presents the question: Did the trial court err in instructing the jury and submitting a question to it on assumption of risk? We conclude that the answer to the question is "yes."

A majority of the court concludes that the record conclusively shows that the plaintiff's causal negligence

was greater than the negligence of any of the defendants as a matter of law. The majority holds that the error did not prejudice the plaintiff and, therefore, affirms the judgment.

Plaintiff Michael Polsky was injured while water-skiing at Camp Interlaken in Vilas county. The camp is operated by defendant Jewish Community Center of Milwaukee. Mr. Polsky was skiing behind a motorboat driven by defendant James Peckarsky, the camp water-skiing instructor. Defendant Dan Levine was in the boat acting as a "spotter." It was his job to keep his eyes on the skier and remain in contact with the driver so as to give a warning in the event the skier got into trouble.

Polsky was doing a trick called the "eagle." He was an "advanced" water skier and had successfully completed the "eagle" once before. Mr. Peckarsky instructed him to do the "eagle" by dropping one ski, pulling in some slack from the rope and gradually putting the towbar behind his ankle, letting the rope go taut, with his toes pointed down. After completing the trick, Polsky fell. His left foot caught between the towbar and the rope, and he suffered the loss of two toes. On direct examination, Polsky testified as follows:

"*A.* As soon as I was stable on the one ski I just began to do the trick.

"*Q.* And what did you do?

"*A.* Just as has been described, pulling in to get a little slack and then putting it around my heel like I mentioned.

"*Q.* Did you have any problem doing that?

"*A.* No.

"*Q.* Did you receive any sign from the boat after you had done that?

"*A.* Yes, sir. After I had done that for about three to five seconds Dan Levine motioned that it was okay and that it was successful when you done it long enough to pass the test.

"*Q.* When was the first time that you noticed any problem?

"*A.* Right after Dan motioned that it was all right. He turned around and faced the front, and then I started to have—I started to feel unstable and I motioned with my thumb down for him to slow the boat down a little bit, but no one could see me, and also the boat started to turn to the right at that time.

"*Q.* When you noticed that nobody could see you, after you gave that signal, what did you do?

"*A.* I then tried to take the rope off of my foot and somehow I fell."

On cross-examination, Polsky was asked about the method he used to disengage himself from the rope after he allegedly signaled to slow down the boat.

"*Q.* The giving of that signal with your right hand, with your left foot in the rope cause you to lose your balance?

"*A.* No. Because I saw, he didn't see me, I then proceeded to try and get the rope off my foot.

"*Q.* And how?

"*A.* In the manner in which I was instructed.

"*Q.* Couldn't you have picked your foot loose without reaching down at all for this bar?

"*A.* Yes, but then I would have fallen.

"*Q.* You knew at that time, did you not, that all you had to do to get out of that rope was to give a kick on your left foot and extricate yourself and fall into the water; isn't that a true statement?

"*A.* But then I would not have successfully completed the trick.

"*Q.* But you could have gotten your foot out that way, couldn't you?

"*A.* I believe I could have."

Mr. Levine testified that he observed Polsky continuously from the time Polsky completed the trick until he fell. Levine denied that Polsky gave any signal to slow the boat down.

Peckarsky testified that he glanced back and saw Polsky fall. He received a warning from Levine, but he could not recall whether the warning preceded his glance.

On Polsky's behalf it was claimed that Levine was negligent in failing to keep a lookout as spotter, and that Peckarsky was negligent in the operation of the boat and in his instructions regarding the manner in which the "eagle" was to be performed. Expert testimony was offered on Polsky's behalf that the "eagle" should not be done by placing any part of one's foot in the yoke formed by the rope and towbar. There was expert testimony on behalf of the defendants that the method of doing the trick was proper as instructed by Peckarsky.

The case was submitted to a jury on a special verdict. The jury found that Levine was not negligent, that Peckarsky was not negligent, and Polsky was not negligent. The jury was also instructed on tacit or implied assumption of risk and one of the special verdict questions was: "At and immediately prior to the fall and injury of the plaintiff Michael Polsky did the plaintiff Michael Polsky assume the risk inherent in the performance of the eagle?" It answered that question "yes."

It was error to give an instruction on assumption of risk. There was no evidence of anything other than what has formerly been called "implied assumption of risk" which constitutes ordinary negligence. Professor Richard V. Campbell, in *Recent Developments of Tort Law in Wisconsin*, Institute of Continuing Legal Education, CLEW (1969), writing on implied assumption of risk, says at page 95: ". . . it is gone in all situations."

Conduct constituting an implied or tacit assumption of risk is no longer a bar to an action for negligence. In *McConville v. State Farm Mut. Auto. Ins. Co.* (1962), 15 Wis. 2d 374, 384, 113 N. W. 2d 14, this court said the *unreasonable* assumption of risk consti-

tutes negligence and should be compared to the negligence of the adverse party. Where what was formerly denominated assumption of risk falls short of express consent to exposure to a particular hazard, it constitutes contributory negligence and is subject to the comparative negligence statute. *Colson v. Rule* (1962), 15 Wis. 2d 387, 395, 113 N. W. 2d 21. These decisions were limited to the relationships out of which they arose, automobile host and guest in the *McConville Case* and farm employer and employee in the *Colson Case.* However, in *Gilson v. Drees Brothers* (1963), 19 Wis. 2d 252, 120 N. W. 2d 63, the rule was extended to all situations involving tacit assumption of risk.

In *Gilson,* this court said at page 258:

". . . greater fairness will result if the claimed negligence . . . *is couched in terms of contributory negligence rather than in terms of assumption of risk.* This will be true whenever the alleged assumption of risk arises by implication . . . as opposed to an express assumption of a known risk. This will serve to extend the rule adopted in the *McConville* and *Colson* cases to all situations involving the tacit assumption of risk. . . ." (Emphasis added.)

■ The instruction should be "couched in terms of contributory negligence." The words "assumption of risk" should not be used in this type of instruction. Rather, the jury should be instructed in terms of ordinary negligence.

■ A sports participant who apprehends danger is bound to use such means as are available to him in the exercise of ordinary care to protect himself from injury. The focus should not be upon participation in the activity, but upon the particular danger faced by the participant, in this case, danger of entanglement in the rope in extricating his foot from the rope and the means used to avoid it.

Because the jury should not have been instructed on assumption of risk, the writer of this opinion and Mr. Justice HEFFERNAN conclude that the jury never did properly consider whether the other defendants were negligent and compare their negligence to the plaintiff's and that the case should be returned for a new trial in the interest of justice.

A majority of this court concludes that, if there had been no question submitted on assumption of risk, the jury would have been compelled to answer the question as to Polsky's negligence "yes." This is because Polsky testified that there was a means of extricating his foot available to him at the time he began to lose his balance. He could simply have kicked the rope and towbar free. He did not do so because he would have fallen and received an unsuccessful mark. As a matter of law, this was a want of ordinary care for his own safety and resulted in negligence greater than any negligence which might be attributed to either Levine or Peckarsky or both of them on any view of the evidence. The erroneous instruction and the improper question submitted to the jury did not affect the substantial rights of the plaintiff. Therefore, under sec. 274.37, Stats.,[1] this court may not reverse or set aside the judgment or order a new trial in this matter.

*By the Court.*—Judgment affirmed.

---

[1] "274.37 **Judgments; application to reverse or set aside; new trial; reversible errors.** No judgment shall be reversed or set aside or new trial granted in any action or proceeding, civil or criminal, on the ground of misdirection of the jury, or the improper admission of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court to which the application is made, after an examination of the entire action or proceeding, it shall appear that the error complained of has affected the substantial rights of the party seeking to reverse or set aside the judgment, or to secure the new trial."