Solomon LUSBY, Vaughn Lusby and Alvin Lusby, Plaintiffs-Appellees,

v.

T.G. & Y. STORES, INC., an Oklahoma corporation; City of Lawton, a municipal corporation; Charles Gent, Steve Wertz, and Kent Dunegan, Defendants-Appellants.

Nos. 82-1721, 82-1779.

United States Court of Appeals, Tenth Circuit.

July 16, 1986.

---

Page Dobson and Michael W. Hinkle of Holloway, Dobson, Hudson & Bachman, Oklahoma City, Okl., for defendants-appellants T.G. & Y Stores, Inc. and Charles Gent.

David M. Curtis, City Atty., Lawton, Okl., for defendants-appellants City of Lawton, Steve Wertz, and Kent Dunegan.

Jack L. Kinzie and Gretchen A. Harris of Andrews, Davis, Legg, Bixler, Milsten & Murrah, and Linda G. Scoggins of Spradling, Alpern, Friot & Gum, Oklahoma City, Okl., for plaintiffs-appellees.

Before LOGAN and McWILLIAMS, Circuit Judge, and CAMPOS, District Judge.*

LOGAN, Circuit Judge.

After examining the briefs and the record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this case. *See* Fed.R. App.P. 34(a); Tenth Cir.R. 10(e). The cause is therefore ordered submitted without oral argument.

Solomon, Vaughn, and Alvin Lusby were arrested in Lawton, Oklahoma, after allegedly shoplifting from a Lawton T.G. & Y. store. In fact there had been no shoplifting, and the Lusby brothers sued in federal court the city of Lawton, T.G. & Y., the off-duty Lawton police officer who served as a store guard, and the Lawton police officers who made the arrest. The brothers asserted federal Civil Rights Act and pendent state law claims against each defendant. A jury returned a verdict for each of the Lusby brothers against each defendant on their 42 U.S.C. § 1983 claims, also finding liability on some of the pendent claims. Two separate appeals were taken; the cases were consolidated; and

this court affirmed. The details are set out in our opinion, *Lusby v. T.G. & Y. Stores, Inc.,* 749 F.2d 1423 (10th Cir.1984).

T.G. & Y. filed a petition for certiorari to the United States Supreme Court. The city and its police officers filed another. The Court granted the city's petition, issuing a one-sentence order vacating the judgment and remanding to this court "for further consideration in light of *City of Oklahoma v. Tuttle,* 471 U.S. —— [, 105 S.Ct. 2427, 85 L.Ed.2d 791] (1985)." *City of Lawton v. Lusby,* —— U.S. ——, 106 S.Ct. 40, 88 L.Ed.2d 33 (1985). On the same day the Court denied T.G. & Y.'s petition. *T.G. & Y. Stores, Inc. v. Lusby,* —— U.S. ——, 106 S.Ct. 65, 88 L.Ed.2d 53 (1985). On reconsideration we reaffirm.

■ In *Tuttle* the Supreme Court examined how much evidence would be necessary to allow an inference of a municipal "policy or custom" as support for municipal liability on a § 1983 claim. The Court held that a jury instruction permitting an inference of a policy from evidence of one instance of misconduct alone was improper. 471 U.S. at ——, ——, 105 S.Ct. at 2436, 2441. In the present case, as part of a lengthy instruction to the jury on the possible liability of the city, the trial court stated:

"[A] single, unusually brutal or egregious beating administered by a group of municipal employees may be sufficiently out of the ordinary to warrant an inference that it was attributable to inadequate training or supervision amount [sic] to deliberate indifference or gross negligence on the part of officials in charge."

R. XXV, 1679.[1] This instruction was almost identical to the instruction struck down in *Tuttle,* 471 U.S. at —— – ——, 105

* The Honorable Santiago E. Campos, United States District Judge for the District of New Mexico, sitting by designation.

1. The entire instruction read as follows:

"INSTRUCTION NO. 15
LIABILITY OF THE CITY OF LAWTON
If you have found that the Plaintiffs were denied any of the civil rights outlined in Instruction No. 11, then you should consider whether the City of Lawton is liable for the denial of the civil right or rights in question.

The standard [sic] for assessing liability of the City are different from the standards assessing the liability of an individual person.

If a police officer denies a person his constitutional rights, the town or city that employs that officer is not liable for such a denial of

S.Ct. at 2430–31, and therefore also was improper.

This does not mandate reversal, however. We first note there was substantial evidence demonstrating that Lawton had a policy that violated plaintiffs' constitutional rights. *See Lusby,* 749 F.2d at 1430–32. Harmless error analysis normally applies in civil cases, *see* 28 U.S.C. § 2111; Fed.R.Civ.P. 61, and it specifically applies to faulty jury instructions, *see* 7 J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 61.09 (2d ed. 1985); 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2886 (1973). The error is harmless when the erroneous instruction could not have changed the result of the case.

Some of the Supreme Court's language in *Tuttle,* however, appears to suggest that an improper jury instruction of this type cannot be held harmless. The plurality opinion states that plaintiffs' independent evidence of inadequate training makes no difference because under the instruction the jury "could" have imposed liability based upon a single incident. *See Tuttle,* 471 U.S. at ——, 105 S.Ct. at 2435; *cf. Connecticut v. Johnson,* 460 U.S. 73, 85, 103 S.Ct. 969, 976, 74 L.Ed.2d 823 (1983) (no reason to believe jury undertakes more difficult task of weighing evidence on one element of crime when alternative element can be presumed). Justice Brennan's concurring opinion also states that "the judgment must be reversed because the instructions permitted the jury to find the city liable even if the jury did not believe" the other evidence of inadequate training of

> right simply because of the employment relationship. Thus, in this particular case, you are instructed that the City of Lawton is not liable for the deprivation of Plaintiffs' constitutional rights solely because it hired and employed the Defendants Wertz and Dunegan. But there are circumstances under which a city is liable for a deprivation of constitutional rights. Where the official policy of the city causes an employee of the city to deprive a person of such rights in the execution of that policy, the city may be liable.
>
> This occurs when a city implicitly or tacitly authorizes, sanctions, ratifies or acquiesces in the constitutional deprivations in such a manner that such constitutional deprivations can be found to result from the execution of a city's official policy or custom.
>
> In the circumstances of the case before you, the City of Lawton can be found to have authorized, sanctioned, or acquiesced in any denial of Plaintiffs' civil rights only if an official policy which results in constitutional deprivations can be inferred from informal acts or omissions of supervisory city officials and if that policy was a proximate cause of the denial of the civil rights of the Plaintiff.
>
> It is Plaintiffs' contention that such a policy existed and they rely upon allegations that the City is grossly negligent in its training of police officers, in the lack of continuing training during the course of their employment, and the City's failure to supervise, review, and discipline members of the police force. Plaintiffs allege that the failure of the City to adequately supervise, train, review, and discipline police officers constitutes deliberate indifference to the constitutional rights of the Plaintiffs and acquiescence in the probability of serious police misconduct.

> The City, of course, denies Plaintiffs' allegations and further denies the existence of an official policy of the City of Lawton which results in constitutional deprivations.
>
> The existence of such a policy is a question of fact for you to determine. The policy, if it existed, need not be expressed in writing; it may be an implicit policy. An official policy can be inferred from the acts of a municipality's supervisory officials, as well as from its omissions, if the inaction amounts to deliberate indifferences or to tacit approval of offensive acts.
>
> Absent more evidence of supervisory indifference, such as acquiescence in a prior pattern of conduct, official policy such as to impose liability on the City of Lawton under the Civil Rights Act cannot ordinarily be inferred from a single incident of illegality such as a first arrest without probable cause or with excessive use of force; but a single, unusually brutal or egregious beating administered by a group of municipal employees may be sufficiently out of the ordinary to warrant an inference that it was attributable to inadequate training or supervision amount [sic] to deliberate indifference or gross negligence on the part of officials in charge.
>
> A municipality or city may not, under the law, assert an affirmative defense of good faith. Accordingly, if the Plaintiff proves by a preponderance of the evidence that the City of Lawton knowingly violated Plaintiffs' civil rights under this instruction, then you should find for the Plaintiffs and against the City without considering any affirmative defense of good faith."
>
> R. XXV, 1677–79.

officers. *Tuttle*, 471 U.S. at ——, 105 S.Ct. at 2441 n. 7. Yet we are reluctant to read *Tuttle* as foreclosing harmless error analysis because of the Supreme Court's routine application of such analysis—even in criminal cases involving important constitutional rights. *See, e.g., Rose v. Clark*, —— U.S. ——, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986); *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

■ We need not decide whether harmless error analysis applies, however, because the city did not object to the "single incident" instruction at trial. Ordinarily, unless objection to a faulty instruction is made before the jury retires, error may not be found later. Fed.R.Civ.P. 51. In *Tuttle* the plaintiff did not raise the city's failure to object to the instruction until the case reached the Supreme Court. The Court ruled that the procedural defense came too late. The Court's plurality opinion noted that the argument "might have prevailed had it been made to the Court of Appeals" but, because the faultiness of the instruction had been argued by the parties and decided squarely in the Court of Appeals, the contemporaneous objection argument would be regarded as waived by the plaintiff. *Tuttle*, 471 U.S. at ——, 105 S.Ct. at 2432.

■ The case before us now is in a different posture. Here there also was no objection to the faulty instruction at trial. But unlike *Tuttle*, on their appeal to this court the defendants' briefs made no objection to the instruction.[2] Our opinion did not mention the instruction. Rather, the defendant city argued on appeal only that there had not been enough evidence of city employees' misbehavior to establish a policy. *See* Brief of Appellants City of Lawton, Steve Wertz and Kent Dunegan at 27–30. This was an insufficiency of the evidence argument, and we treated it as such. *See Lusby*, 749 F.2d at 1432.

The city's petition for certiorari in the Supreme Court, filed before the Court decided *Tuttle*, also made the "single incident" argument as one of sufficiency of the evidence. The jury instruction was mentioned only obliquely in another section of the petition.[3] Plaintiffs' response, filed after *Tuttle* was issued, did argue that the instruction was not properly before the Court, because of the city's failure to object at trial or to raise any error in the instruction before the circuit court. Respondents' Consolidated Brief in Opposition to the Petitions for Writs of Certiorari at 11–12. We do not read the Supreme Court's cryptic order remanding for our reconsideration in light of *Tuttle* as a holding that the Rule 51 defect is either waived or inapplicable in this case. There is no point at which we can say that the Lusby brothers' Rule 51 contemporaneous objection argument should have been raised earlier and thus can be regarded as waived. There was no plenary consideration of the instruction's merits, as there was in the circuit court opinion in *Tuttle*, to preclude raising the procedural defect now. The Lusbys again have raised the Rule 51 issue in their briefs on remand. We hold that it is a timely and valid defense to the city's argument that the instruction error warrants a new trial.

The city is not aided by the plain error exception to the contemporaneous objection requirement for appellate review. The exception permits an appellate court to correct only "particularly egregious errors" affecting the fairness, integrity or public reputation of judicial proceedings. *United States v. Young*, 470 U.S. 1, 105 S.Ct. 1038, 1046–47, 84 L.Ed.2d 1 (1985) (criminal case) (quoting *United States v. Frady*, 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982); *United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 392,

---

**2.** The panel does not recall any objection to the instruction at oral argument, which was not recorded.

**3.** "However, City begs this Court to read Instruction No. 15 regarding the liability of the City for

§ 1983 claims given at trial (App. E). What were the jury issues on City's liability: negligent training, failure to supervise and police misconduct." Petition for a Writ of Certiorari at 14–15.

80 L.Ed. 555 (1936)); *United States v. Hooks*, 780 F.2d 1526, 1532 (10th Cir.1986) (criminal case). It is to be used sparingly, only when a "miscarriage of justice" would otherwise result. *Young*, 470 U.S. ——, 105 S.Ct. at 1047 (quoting *Frady*, 456 U.S. at 163 n. 14, 102 S.Ct. at 1592 n. 14). The exception is no less rarely applied in civil cases. *See Aspen Highlands Skiing Corp. v. Aspen Skiing Co.*, 738 F.2d 1509, 1516 (10th Cir.1984) (use limited to "exceptional cases"; late objection to faulty jury instruction disallowed), *aff'd*, —— U.S. ——, 105 S.Ct. 2847, 86 L.Ed.2d 467 (1985).

■ In determining whether plain error applies in this case, we must view the instruction error in the context of the entire record. *Young*, 105 S.Ct. at 1047. "It is simply not possible for an appellate court to assess the seriousness of the claimed error by any other means." *Id.* We do not read *Tuttle* to command a finding of plain error in the instant case, especially in light of the plurality's statement that, if the failure to object to the instruction had been raised earlier, that argument might have prevailed. *Tuttle*, 471 U.S. at ——, 105 S.Ct. at 2432.[4]

■ We are satisfied that, viewing the record as a whole, there was sufficient evidence of more than a single incident to support the establishment of a city policy and hence liability.[5] First, the city's brief on the initial appeal recited that plaintiffs had introduced evidence of *seven* instances of police action to meet its burden to establish a city policy or custom that violated their constitutional rights. It asserted that the instances were either unsubstantiated or otherwise defective. Second, there was in the record a "smoking gun," so to speak. The police chief admitted a policy of arresting shoplifting suspects without any independent investigation of merchants' allegations and providing special forms to merchants detaining suspects that allowed officers to issue summons to suspects when they arrived at the store. *Lusby*, 749 F.2d at 1430, 1432. The unconstitutional policy was thus in effect admitted, and the instances introduced by the Lusbys were not even needed for an inference of a city policy, as our original opinion noted. *Id.* In light of this we see no miscarriage of justice requiring that the city be given a new trial.[6]

What has been said about the city's case applies *a fortiori* to the other defendants.

4. Plain error analysis in the context of failure to make a contemporaneous objection required under Rule 51 differs from harmless error analysis. In the former the party who failed to object (usually the appellant) has the burden to show that the error almost surely affected the outcome of the case. In harmless error analysis the beneficiary of the error (usually the appellee) has the burden to show that the error almost surely did *not* affect the outcome of the case.

5. The Supreme Court has since made it clear that, although a single incident of unconstitutional conduct will not support a finding of a municipal policy, once a policy is established a single application will satisfy the law's requirements. *Pembaur v. City of Cincinnati*, —— U.S. ——, —— n. 6, 106 S.Ct. 1292, 1297 n. 6, 89 L.Ed.2d 452 (1986).

6. Although the Supreme Court's decision in *Tuttle* was issued long after the instant case was tried, there is no retroactivity problem here. The issue was one which the parties should have been aware of and raised during the trial of the case. This trial was held in 1981. We had held in *McClellan v. Facteau*, 610 F.2d 693 (10th

Cir.1979), that showing "individual officers violated a person's constitutional rights *on an isolated occasion* is not sufficient to raise an issue of fact whether adequate training and procedures were provided." *Id.* at 697 (emphasis added). The city's briefs in this court cited 1980 and 1981 federal district court decisions holding that a single incident of illegal conduct did not support a finding of governmental custom or policy. Brief for Appellants City of Lawton, Steve Wertz and Kent Dunegan at 26. T.G. & Y.'s brief cites *McClellan* and a 1982 Seventh Circuit case to the effect that a single act of unconstitutional conduct did not support an inference of an impermissible policy. Brief of Appellants T.G. & Y. Stores, Inc. and Charles Gent at 12, 19. These cases were cited as part of defendants' argument that not enough evidence had been presented, and not as an argument objecting to the "single incident" instruction. Our own decision in *Tuttle* could not have misled defendants because it was not decided until 1984, well after the 1981 trial of the present case. *See Tuttle*, 728 F.2d at 456. Thus defendants should have objected to the instruction.

None of them objected to the instruction. In fact, the instruction given with respect to their liability did not contain the reference to a single incident.[7] The brief for T.G. & Y. and Gent on the initial appeal made no argument against the instruction; it mentioned single incident cases only in making a sufficiency of the evidence argument. Further, the Supreme Court denied those defendants' petition for certiorari on the same day it granted the petition of the city and its officers.

We reaffirm our decision.

7. The pertinent part of that instruction is as follows:
   "Plaintiffs have alleged that Defendants Gent, Wertz and Dunegan, acting in concert as police officers, and Gent, as an employee of TG & Y and acting in concert with other employees of TG & Y, knowingly and maliciously and without justification or probable cause, caused certain misdemeanor charges to be filed against the Plaintiffs and that this was part of a customary plan between the police and TG & Y resulting in the unlawful detention of Plaintiffs.
   Defendants deny that any such custom existed and deny that TG & Y acted under color of law."
   R. XXV, 1675.

