**FIRST TRUST COMPANY OF NORTH DAKOTA, as conservator of the Estate of Steven R. Holen, Steven R. Holen and Karlene Holen, Plaintiffs and Appellants,**

v.

**SCHEELS HARDWARE & SPORTS SHOP, INC., William Boyer, By and Through his mother and natural guardian, Kathryn Boyer, and Kathryn Boyer, Defendants and Appellees.**

Civ. No. 870134.

Supreme Court of North Dakota.

June 28, 1988.

Conmy, Feste, Bossart, Hubbard & Corwin, Ltd., Fargo, for plaintiffs and appellants, argued by David R. Bossart. Appearance by Kim E. Brust, Fargo.

Lee Hagen Law Office, Ltd., Fargo, for plaintiffs and appellants. Appearance by Leland F. Hagen, Fargo.

Nilles, Hansen & Davies, Ltd., Fargo, for defendant and appellee Scheels Hardware & Sports Shop, Inc., argued by Duane H. Ilvedson. Appearance by Bill Harrie, Fargo.

Serkland, Lundberg, Erickson, Marcil & McLean, Ltd., Fargo, for defendants and appellees William and Kathryn Boyer, argued by Armond G. Erickson. Appearance by Maureen Holman, Fargo.

ERICKSTAD, Chief Justice.

The plaintiffs, Steven Holen, his mother, Karlene Holen, and the conservator of Steven's estate, First Trust Company of North Dakota (First Trust), have appealed from a judgment, entered upon a jury verdict, dismissing their personal injury action against the defendants, Scheels Hardware & Sports Shop, Inc. (Scheels Hardware), Kathryn Boyer, and her son, William Boyer. The plaintiffs have also appealed from a court order denying their alternative motions for judgment notwithstanding the verdict and for a new trial. We reverse the judgment as to Scheels Hardware, remand for a new trial as to Scheels Hardware, and in all other respects affirm the judgment.

This case involves a tragic accident by which Steven, the fourteen year old son of Karlene, was shot by William with a twenty-two caliber pistol and was critically injured. At the time of the accident William was fifteen years old and resided with his mother, brother, and two sisters in Fargo. For several months prior to the accident William had saved money to purchase a pistol and on three separate occasions had looked at handguns and talked to salesmen at Scheels Hardware about purchasing one. On January 1, 1983, William and Kathryn went to Scheels Hardware to purchase a pistol. Kathryn testified that the salesman gave William a handgun, that William showed it to Kathryn, and that William then told the salesman that they would buy it. She also testified that she and the salesman completed a federal firearms forms, after which William carried the pistol to the checkout stand, took cash from his pocket to pay for the pistol, and upon completing the sale carried the pistol out of the store.

On the evening of the accident, January 4, 1983, Steven and two other boys were visiting with William in his bedroom. It is undisputed that prior to the accident the boys were handling William's pistol. There was conflicting testimony from which the triers of fact could infer that, just prior to the accident and unknown to the others, Steven had loaded the pistol with one or more bullets. When the accident happened Steven was facing William's dresser with his back to the other three boys. William, pointing the pistol in the direction of the dresser, began pulling the trigger. The pistol dry fired twice, but the third time it discharged, and the bullet struck Steven in the head, passing through his brain, leaving him permanently and totally disabled

for life.[1]

The plaintiffs brought this personal injury action against the defendants, alleging that Steven's injuries and the plaintiffs' resultant damages were caused by the defendants' negligence. More specifically, they asserted that Scheels Hardware "negligently, recklessly, carelessly, and unlawfully sold, delivered, or otherwise transferred a pistol" to William and that William negligently shot Steven with the pistol. No specific allegations of negligence or wrongful conduct were pled against Kathryn.

The jury returned a special verdict finding that Scheels Hardware and Kathryn were both negligent but that their negligence was not the proximate cause of Steven's damages. The jury also found that both Steven and William were negligent and that their negligent conduct was each a fifty percent proximate cause of Steven's damages. In accordance with Section 9–10–07, N.D.C.C., under which a plaintiff may recover damages only if his negligence is not as great as the defendant's negligence, judgment was entered awarding no damages to the plaintiffs and dismissing their action on the merits. The plaintiffs then filed alternative motions for judgment notwithstanding the verdict and for a new trial which were denied by order of the trial court. The plaintiffs have filed this appeal from that order and from the judgment.

The plaintiffs assert that the trial court's refusal to instruct the jury on a theory of negligent entrustment constituted reversible error. We agree.

■■■ The doctrine of negligent entrustment is applicable whenever a person supplies a chattel to another whom the supplier has reason to know may use it in a manner involving unreasonable risk of harm to himself or others. *Barsness v. General Diesel & Equipment Co.*, 383 N.W.2d 840 (N.D.1986). As applied in our state, the doctrine is appropriately summarized by Section 390 of the Restatement 2d of Torts (1965):

"One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them."

Although the trial court instructed the jury on ordinary negligence it refused to instruct on a theory of negligent entrustment. We believe that there was adequate evidence admitted at trial for the question of negligent entrustment to go to the jury.

■■■ Such an instruction could have had a direct bearing on the jury's proximate cause determination, because the foreseeable misuse of a chattel by the person to whom it has been negligently entrusted cannot be a superseding intervening cause which extinguishes the supplier's liability. *Axelson v. Williamson*, 324 N.W.2d 241 (Minn.1982). The intervening negligence of another cannot be a superseding cause which extinguishes a tortfeasor's liability if that negligence was a foreseeable consequence of the situation created by the tortfeasor. *See Vattimo v. Lower Bucks Hospital, Inc.*, 59 Pa.Commw.Ct. 1, 428 A.2d 765, 769–770 (1981), *modified on other grounds*, 502 Pa. 241, 465 A.2d 1231 (1983); *Parness v. City of Tempe*, 123 Ariz. 460, 600 P.2d 764 (1979); *Stewart v. Wulf*, 85 Wis.2d 461, 271 N.W.2d 79, 87–88 (1978); *Suchomajcz v. Hummel Chemical Co.*, 524 F.2d 19, 28–29 (3rd Cir.1975); *Mautino v. Piercedale Supply Co.*, 338 Pa. 435, 13 A.2d 51 (1940).

A vivid explanation of the rule is provided by *Prosser & Keeton on Torts*, Ch. 7, pp. 303–304 (5th ed. 1984):

"If a gun is entrusted to a child, it suggests at once to anyone with any imagination at all that someone, the child or another, is likely to be shot. In all of these cases there is an intervening cause combining with the defendant's conduct to produce the result, and in each case

---

1. Steven Holen died on October 29, 1987, subsequent to the filing of this appeal.

the defendant's negligence consists in failure to protect the plaintiff against that very risk.

"Obviously the defendant cannot be relieved from liability by the fact that the risk, or a substantial and important part of the risk, to which the defendant has subjected the plaintiff has indeed come to pass. Foreseeable intervening forces are within the scope of the original risk, and hence of the defendant's negligence. The courts are quite generally agreed that intervening causes which fall fairly in this category will not supersede the defendant's responsibility."

Although not expressly limited to negligent entrustment situations, the principles of law ,expressed by Sections 442(A) and 449 of the Restatement 2d of Torts (1965) are applicable:

"§ 442 A. Intervening Force Risked by Actor's Conduct

"Where the negligent conduct of the actor creates or increases the foreseeable risk of harm through the intervention of another force, and is a substantial factor in causing the harm, such intervention is not a superseding cause."

"§ 449. Tortious or Criminal Acts the Probability of Which Makes Actor's Conduct Negligent

"If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby."

The jury in this case should have been given a negligent entrustment instruction and on remand should be further instructed that if there is negligent entrustment by the defendant Scheels Hardware & Sports Shop, Inc., a foreseeable misuse of the chattel by the person to whom it is entrusted cannot be a superseding cause which will extinguish the defendants' liability for harm caused by the misuse. The plaintiffs' requested instruction on negligent entrustment referred only · to the "sale" of the pistol to William, and, thus, could not apply to Kathryn.[2]

▮▮▮ The plaintiffs assert that the trial court erred ˙in giving the jury an assumption of risk instruction.[3] Although expressing reservations, the trial court gave the instruction over plaintiffs' objection. The trial court's reservations were well founded. When the legislature adopted our comparative negligence law, Section 9–10–07, N.D.C.C., it omitted the language upon which the doctrine of assumption of risk was based, thereby abolishing the doctrine. Feuerherm v. Ertelt, 286 N.W.2d 509 (N.D.1979); Wentz v. Deseth, 221 N.W. 2d 101 (N.D.1974).

By giving an assumption of risk instruction the court may have misled the jury to conclude that if a plaintiff unreasonably encounters a known risk the defendant is thereby relieved of all liability. Under our comparative negligence law the jury, when it finds that the plaintiff has unreasonably encountered a known risk, must, as with any other contributory negligence of the plaintiff, compare that conduct with the negligence of the defendant and apportion the negligence accordingly. Thus, the jury should have been instructed in terms of ordinary negligence without using assumption of risk terminology. See Polsky v. Levine, 73 Wis.2d 547, 243 N.W.2d 503 (1976).

The plaintiffs assert that the trial court erred in striking Karlene's claim for loss of "the love, affection, society, services, comfort, guidance, companionship, and support" of her child, Steven. We agree.

---

2. What we say herein about Kathryn Boyer is also applicable to William Boyer, by and through his mother and natural guardian, Kathryn Boyer.

3. The defendants assert that this issue has been waived, because the plaintiffs failed to raise it in their motion for a new trial. See Andrews v. O'Hearn, 387 N.W.2d 716 (N.D.1986). We discuss this issue not as a potential ground for reversal but to prevent error from occurring at the retrial upon remand.

In *Stejskal v. Darrow,* 55 N.D. 606, 215 N.W. 83 (1927), an action brought by a father against a physician for the wrongful death of his daughter, this court, following the English common law, concluded that only pecuniary damages could be recovered and that such damages did not include loss of society or companionship. Following the *Darrow, supra,* decision this court in *Kalsow v. Grob,* 61 N.D. 119, 237 N.W. 848 (1931), held that in an action for personal injury a father cannot recover for the loss of society and companionship of his child. Were we to treat these cases as controlling precedent, which under the guiding principles of *stare decisis* would be entirely appropriate, the resolution of this issue would be simple and obvious that Karlene has no right to recover for the loss of her son's society and companionship. We are convinced, however, that this is the appropriate time for us to reexamine the common law principles of yesterday upon which we have denied recovery for such loss.

In *Lembke v. Unke,* 171 N.W.2d 837 (N.D.1969), this court quoted with approval Chief Justice Vanderbilt's statements in *State v. Culver,* 23 N.J. 495, 129 A.2d 715 (1957), reflecting upon the dynamic nature of our common law:

"One of the great virtues of the common law is its dynamic nature that makes it adaptable to the requirements of society at the time of its application in court. There is not a rule of the common law in force today that has not evolved from some earlier rule of common law, gradually in some instances, more suddenly in others, leaving the common law of today when compared with the common law of centuries ago as different as day is from night. The nature of the common law requires that each time a rule of law is applied it be carefully scrutinized to make sure that the conditions and needs of the times have not so changed as to make further application of it the instrument of injustice." 171 N.W.2d at 844.

■ Upon scrutinizing the common law rule that a parent cannot recover for loss of a child's society and companionship we conclude that, although there is a split of authority in the modern case decisions, the common law rule should be abandoned and recovery for this serious detriment should be allowed. *See Reben v. Ely,* 146 Ariz. 309, 705 P.2d 1360 (1985) (personal injury action); *Dymek v. Nyquist,* 128 Ill.App.3d 859, 83 Ill.Dec. 52, 469 N.E.2d 659 (1984) (personal injury action); *Shockley v. Prier,* 66 Wis.2d 394, 225 N.W.2d 495 (1975) (personal injury action); *Yordon v. Savage,* 279 So.2d 844 (Fla.1973) (personal injury action); *Smith v. City of Detroit,* 388 Mich. 637, 202 N.W.2d 300 (1972) (wrongful death action).

The supreme court of Wisconsin in *Shockley* explained that the common law rule denying parental recovery for loss of a child's society and companionship arose in times when children were treated similar to servants and child labor was crucial for the economic system, with parents having a right to their children's services and earnings. We agree with the Wisconsin court that society's view of the family relationship has changed:

"The 'remedy' of loss of minor's earning capacity during minority is of diminishing significance. Since our court last laid down the rule in 1925, the family relationship has changed. Society and companionship between parents and their children are closer to our present day family ideal than the right of the parents to the 'earning capacity during minority,' which once seemed so important when the common law was originally established.

\* \* \* \* \* \*

"We conclude that the law should recognize the right of parents to recover for loss of aid, comfort, society and companionship of a child during minority when such loss is caused by the negligence of another." 225 N.W.2d at 499.

In *Umphrey v. Deery,* 78 N.D. 211, 48 N.W.2d 897 (1951), decided twenty years after the *Kalsow, supra,* decision, the view that damages in a wrongful death or personal injury action are limited to a pecuniary loss was given a less restrictive interpretation by this court:

"... the jury may not give damages for a mere sentimental loss but it is not restricted to the immediate loss of money or property, and damages may be awarded for the loss of any benefit or advantage which is capable of being estimated in money as distinguished from a mere sentimental loss." 48 N.W.2d at 899, Syllabus 2.

Subsequently, in *Henke v. Peyerl*, 89 N.W.2d 1, 9 (N.D.1958), while clinging to a pecuniary loss standard, this court concluded that a parent could recover as damages for the wrongful death of a child the " 'comfort * * * of a kind, faithful and loving child * * ' ." At the same time, while recognizing that damages for pain and suffering "[are] not susceptible of arithmetical calculation" we concluded that the jury, in its discretion, could award compensation for such detriment. *Lake v. Neubauer*, 87 N.W.2d 888, 891 (N.D.1958). In fact, compensation for a plethora of noneconomic damages, none of which are capable of precise arithmetic calculation, may now be awarded in personal injury actions.[4] Consistent with our recent case decisions and legislation providing an expanded view of compensable detriment to include actual loss of a nonpecuniary nature, we hold that a parent can recover for the loss of a child's society and companionship caused by another's negligence.[5]

■ The plaintiffs assert that the trial court committed error in not allowing them to amend their complaint to include a claim for punitive damages against Scheels Hardware for willful and wanton conduct. The motion to amend was heard by the trial court approximately one month prior to the scheduled trial date. The court denied the motion for amendment on the ground that it was untimely.

Under Rule 15(a), N.D.R.Civ.P., amendments to the pleadings are to be freely given when justice so requires. *Geo–Mobile, Inc. v. Dean Bender Chevrolet*, 386 N.W.2d 918 (N.D.1986); *Crosby v. Sande*, 180 N.W.2d 164 (N.D.1970). However, it is well settled that a trial court's decision on a motion to amend a pleading is within its sound discretion and will not be overruled on appeal in the absence of an abuse of discretion. *Bender v. Time Insurance Co.*, 286 N.W.2d 489 (N.D.1979). We conclude that the trial court did not abuse its discretion in denying the motion.

■ The plaintiffs assert that the trial court erred in excluding evidence regarding firearm sale procedures and prior unlawful firearm sales by Scheels Hardware. In excluding the evidence the trial court concluded that it lacked probative value with regard to any material issue at trial. We do not believe that the trial court abused its discretion in excluding this evidence.

■ The plaintiffs assert that the trial court erred in admitting testimony, over their objection, that on the day of the accident Steven used a twenty-two caliber rifle to shoot at a hockey puck in the basement

---

4. *See* Section 32–03.2–04, N.D.C.C., enacted by the 1987 legislature:

"*32–03.2–04. Economic and noneconomic damages for wrongful death or injury to person.* In any civil action for damages for wrongful death or injury to a person and whether arising out of breach of contract or tort, damages may be awarded by the trier of fact as follows:

\* \* \* \* \* \*

"2. Compensation for noneconomic damages, which are damages arising from pain, suffering, inconvenience, physical impairment, disfigurement, mental anguish, emotional distress, fear of injury, loss or illness, loss of society and companionship, loss of consortium, injury to reputation, humiliation and other nonpecuniary damage."

5. In deciding a related issue, we held in *Hastings v. James River Aerie No. 2337, Etc.*, 246 N.W.2d 747 (N.D.1976), that a child may not sue to recover for the loss of an injured parent's counsel and guidance. Following the *Hastings, supra*, decision, we held in *Morgel v. Winger*, 290 N.W.2d 266 (N.D.1980), that a minor cannot recover for loss of parental consortium. At least one authority [the Supreme Court of California in *Baxter v. Superior Court of Los Angeles County*, 138 Cal.Rptr. 315, 563 P.2d 871, 19 Cal.3d 461 (1977),] has concluded that there does not exist a justifiable distinction between a parent's claim for loss of an injured child's society and companionship and a child's claim for loss of consortium of an injured parent which would warrant recovery on one claim but not the other. We leave resolution of that issue for another day in a case where it is squarely presented.

of his home. Under Rule 404(b), N.D.R. Ev., evidence of prior acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith, but may be admitted for other purposes. In this case there was a disputed issue as to whether Steven or someone else had placed live ammunition in the chamber of William's pistol prior to the accidental shooting. The trial court determined that the evidence of Steven's prior use of a twenty-two caliber weapon on the day of the accident had some probative value regarding the availability to Steven of twenty-two caliber ammunition and Steven's knowledge of loading and using twenty-two caliber weapons. We conclude that the trial court did not abuse its discretion in admitting this evidence.

Stephen Teret testified as an expert on behalf of the plaintiffs on injury prevention and injury epidemiology. Teret testified that the regulation of firearm sales is a primary means of preventing firearm injuries to children. He testified that the population at highest risk of an unintentional shooting involves males from the ages of 13 to 17 years old and that in North Dakota the largest group for non-hunting gun injuries involves persons between the ages of 11 and 22 years. He further testified that it would be "wholly unreliable" to expect that one could minimize the risk of gun injuries for young males by careful behavior of that group. Teret was then asked for his opinion of whether or not it would have been foreseeable to Scheels Hardware that the sale of the gun to William could result in an unintentional shooting and injury to someone. The trial court sustained an objection to that question on the ground that the question was beyond the scope of Teret's expertise, that the question might invade the province of the jury, and that, even if probative, the prejudicial effect of the testimony outweighed its probative value. The plaintiffs assert that the trial court erred in excluding this testimony. We disagree.

 In support of this issue the plaintiffs assert that under Rule 704, N.D. R.Ev., testimony is not excludable on the

ground that it embraces an ultimate issue to be decided by the trier of fact. The assertion is correct. Nevertheless, the determination of whether expert testimony will assist the trier of fact, and should therefore be admitted, rests within the sound discretion of the trial court and will not be overturned on appeal unless the trial court has abused its discretion. *Olson v. A.W. Chesterton Co.*, 256 N.W.2d 530 (N.D.1977). Teret, as an expert in the field of injury epidemiology, was allowed to testify about gun injuries to minors and other persons, their causes, and the methods of avoiding or reducing such injuries. However, the question to which the trial court sustained an objection was whether Scheels Hardware should have foreseen that the sale of the gun to William Boyer could result in an unintentional shooting. The trial court concluded that Teret's answer to that question would go beyond his expertise as an injury epidemiologist and would not assist the trier of fact. We do not believe that the trial court abused its discretion in disallowing Teret's response to that particular question.

 Ron Charpentier, an employee at Scheels Hardware, also testified on behalf of the plaintiffs who assert that the trial court erred in excluding Charpentier's testimony in response to questions regarding the foreseeability that a handgun in the possession of a person under 17 years old could result in an accidental shooting. The trial court sustained an objection to this line of questioning based upon lack of proper foundation. The plaintiffs' counsel made no attempt to lay an adequate foundation upon which the witness may have been allowed to respond. Furthermore, the plaintiffs made no offer of proof of what Charpentier's testimony would have been. We conclude that the trial court did not abuse its discretion in sustaining the objection.

 William McDonald, Jr., the supervisor of hunter education with the North Dakota Game and Fish Department, testified on behalf of the defendants, over the plaintiffs objection, regarding the statistics on hunting related firearm accidents in the

state. The trial court ruled that McDonald was not qualified to testify as an expert regarding probabilities of an accident but that McDonald would be allowed to give statistical testimony relevant to the issue of foreseeability. The plaintiffs assert that the trial court erred in admitting this testimony. We conclude that the trial court did not abuse its discretion in admitting this testimony.

 The plaintiffs assert that the trial court erred by instructing the jury with the following language which makes foreseeability an element of proximate cause:

> "To constitute proximate cause, it must appear, ... that injury to another ought to have been foreseen or reasonably anticipated by a person of ordinary intelligence in the light of the attending circumstances. However, it is not necessary that the particular injury should have been foreseen."

The foregoing language is nearly a verbatim recitation of the language used by the plaintiffs in their requested jury instruction on proximate cause. Consequently, having invited this alleged error, they have waived their right to raise any objection to it on appeal.

 The plaintiffs assert that the trial court erred in refusing to give the jury their requested instruction that, as a matter of law, firearms are considered dangerous instrumentalities. In support of their position that the instruction should have been given the plaintiffs cite *Olson v. Hemsley*, 48 N.D. 779, 187 N.W. 147, 148–149 (1922). In that case the court stated, "... a firearm, a revolver, when loaded, is a dangerous instrumentality to leave in any location where it would be accessible to boys of as tender years as these." That case, in which a store owner left a loaded revolver in a cash drawer in his store, is clearly distinguishable from the facts in this case. Consequently, the case is not persuasive authority that the trial court erred in refusing to give the plaintiffs' requested instruction. The plaintiffs have provided no additional authority in support of their requested instruction and have

failed to persuade us that the trial court erred in refusing to submit it to the jury.

The plaintiffs assert that the trial court erred in refusing to instruct the jury on "loss of enjoyment of life" as an element of damages. The trial court instructed the jury that in arriving at its verdict for damages it could consider each of the following items: (1) compensation for the reasonable value of medical expenses, (2) compensation for the reasonable value of loss of productive time, (3) reasonable compensation for pain, discomfort, and mental anguish, and (4) reasonable compensation for complete or partial permanent disability in health, mind, or person. The trial court did not give the plaintiffs' requested instruction which would have included loss of enjoyment of life as a separate element of damages.

The courts are not in agreement on this issue. *See* Annotation, *Loss of Enjoyment of Life as a Distinct Element or Factor in Awarding Damages for Bodily Injury*, 34 A.L.R.4th 293 (1984). Instructing the jury that it may award for loss of enjoyment of life as a separate element of damages has been upheld as an appropriate instruction. *E.g.*, *Thompson v. National R.R. Passenger Corp.*, 621 F.2d 814 (6th Cir.1980). However, a number of jurisdictions have concluded that loss of enjoyment of life is not a separate element of damages but may be argued to the jury as a suffered detriment included as part of some other element of damages such as pain and suffering or permanent injury. *See, e.g., Flannery v. United States*, 297 S.E.2d 433 (W.Va.1982) (included as part of permanent injury award); *Judd v. Rowley's Cherry Hill Orchards, Inc.*, 611 P.2d 1216 (Utah 1980) (included as part of pain and suffering award); *R.P. Dugas v. Kansas City Southern Railway Lines*, 473 F.2d 821 (5th Cir.1973) (included as part of pain, suffering, and inconvenience award).

 We are not convinced that the trial court erred in refusing the plaintiffs' request to instruct on loss of enjoyment of life as a separate element of damages in this case. It would have been appropriate for the plaintiffs to have argued loss of

enjoyment of life as a component of pain, discomfort, mental anguish, and impairment of health, mind, or person, all of which were set forth in the trial court's instructions as recoverable elements of damages in this case. We conclude that the trial court's instructions adequately apprised the jury of the law on damages and that the trial court did not err in refusing to give the plaintiffs' requested instruction.

The plaintiffs assert that the trial court erred in refusing to grant their motion for judgment n.o.v. based upon the ground that, as a matter of law, the negligence of Scheels Hardware and Kathryn Boyer was a proximate cause of the plaintiffs' injuries. The test for determining whether judgment n.o.v. should be granted is whether or not the evidence, when viewed in the light most favorable to the party against whom the motion is made, leads to but one conclusion as to the verdict about which there can be no reasonable difference of opinion. *Okken v. Okken,* 325 N.W.2d 264 (N.D.1982).

The question of proximate cause in a negligence case is generally one for the jury to decide. *Knorr v. K–Mart Corp.,* 300 N.W.2d 47 (N.D.1980). We believe that under the circumstances of this case reasonable persons could differ on the question of proximate cause. *See, e.g., Salvi v. Montgomery Ward & Co., Inc.,* 140 Ill. App.3d 896, 95 Ill.Dec. 173, 489 N.E.2d 394 (1986). We conclude, therefore, that the trial court did not err in refusing to grant the motion for judgment n.o.v.

The plaintiffs have raised numerous other issues on appeal which are not necessary for disposing of this case and which are not certain to arise upon remand for a new trial. Consequently, we need not discuss or resolve those issues.

The judgment is reversed and the matter remanded for a new trial with respect to the claims against Scheels Hardware, and is otherwise affirmed.

GIERKE and MESCHKE, JJ., concur.

VANDE WALLE, Justice, concurring specially.

I reluctantly concur in that portion of the majority opinion which concludes that because the trial court refused to give an instruction on the theory of negligent entrustment this case should be remanded for a new trial against Scheels. My reluctance is predicated on the fact that although the instruction was not given the case was argued to the jury on just such a theory and I have serious doubts that this jury would have decided the case any differently if the instruction had been given. However, a party is entitled to an instruction to support the party's theory if there is evidence to support that theory. *Mauch v. Manufacturer's Sales & Service, Inc.,* 345 N.W.2d 338 (N.D.1984). Because the theory of negligent entrustment is different from ordinary negligence, and because there was evidence to support the theory, the plaintiff was entitled to an instruction on negligent entrustment pursuant to this court's decision in *Barsness v. General Diesel & Equipment Co.,* 383 N.W.2d 840 (N.D.1986).

Although no instruction on superseding cause was requested, and therefore none was rejected by the trial court, it seems apparent to me that if the trial court had given the negligent-entrustment instruction it may well have given an instruction on superseding cause. My understanding of the record is that the trial court viewed the case as an ordinary negligence case when the instruction on negligent entrustment was refused. I cannot discern that the trial court refused the negligent-entrustment instruction because an instruction on superseding cause had not also been requested.

I do not understand the majority opinion to require a new trial with regard to Kathryn. I agree that the proposed instruction on negligent entrustment could not have applied to her. Plaintiff purposely modified the *Restatement* language which was broad enough to have included Kathryn as a supplier to read that one "who sells" to another is subject to liability. Instructions that are submitted to the parties

for exception and are not objected to after an attorney for the party has had them for a reasonably sufficient time to study them become the law of the case and any objections to them are waived. *Jore v. Saturday Night Club, Inc.*, 227 N.W.2d 889 (N.D.1975). The same rationale should apply to instructions proposed by a party but rejected by the court, i.e., on appeal the party should be bound by the language of the proposed instructions. In view of the language which the plaintiff purposely proposed as contrasted with the language of the *Restatement* which was relied upon in *Barsness, supra,* I believe that as a matter of law the proposed instruction cannot be construed to be broad enough to constitute a triable claim against Kathryn. Furthermore, as the majority opinion notes, "No specific allegations of negligence or wrongful conduct were pled against Kathryn." Kathryn was tried on the basis of ordinary negligence and her negligence was not determined to be the proximate cause of Steven's injuries.

Thus there is no other basis for reversing and remanding for a new trial as to Kathryn. The majority opinion sustains the trial court on the other issues raised by plaintiff except that involving the instruction on assumption of risk. But, as the majority opinion observes at footnote 2, that issue was not a potential ground for reversal but is discussed only to prevent error from occurring at the trial on remand, the issue not having been raised in the plaintiff's motion for new trial as required by *Andrews v. O'Hearn,* 387 N.W. 2d 716 (N.D.1986), and *Nelson v. Trinity Medical Center,* 419 N.W.2d 886 (N.D. 1988).

LEVINE, Justice, concurring and dissenting.

The trial court concluded that any error relating to Scheels' negligence was harmless because the jury, in fact, found that Scheels was negligent. I agree and would affirm the judgment.

The majority holds that the failure to instruct on negligent entrustment is reversible error because such an instruction "could have had a direct bearing on the jury's proximate cause determination, because the foreseeable misuse of the chattel by the person to whom it has been negligently entrusted cannot be a superseding intervening cause which extinguishes the supplier's liability." [Page 4 majority opinion.] The majority concludes that the jury should have been given not only the requested negligent entrustment instruction but on remand "should be further instructed that if there is a negligent entrustment by the defendant Scheels Hardware and Sports Shop, Inc., a foreseeable misuse of the chattel by the person to whom it is entrusted cannot be a superseding cause which will extinguish the defendant's liability for harm caused by the misuse."

The majority appears to base its finding of reversible error not merely on the failure to give the requested instruction on negligent entrustment, but on a combination of that failure along with the omission of an instruction that foreseeable misuse of a chattel by the person to whom it has been negligently entrusted cannot be a superseding intervening cause which extinguishes the supplier's liability.

The plaintiffs, however, did not request the latter instruction on superseding cause, nor object to its omission. Plaintiffs therefore waived any error arising from the omission of this superseding cause instruction. Rule 51, NDRCivP; *State v. Janda,* 397 N.W.2d 59 (N.D.1986); *Vasichek v. Thorsen,* 271 N.W.2d 555 (N.D.1978). Nonetheless, the majority reverses.

The majority, therefore, must be implicitly applying an obvious error analysis. The obvious error doctrine is an exception to the rule that there must be an objection or a request for an instruction in order to preserve the issue for appellate review. *See State v. Janda, supra.* The obvious error exception permits an appellate court to correct only "particularly egregious errors" affecting the fairness, integrity or public reputation of judicial proceedings. *United States v. Young,* 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985); *State v. Janda, supra; State v. Miller,* 388 N.W.2d 522 (N.D.1986). It is to be used sparingly

and only when a miscarriage of justice would otherwise result. *Young*, 470 U.S. at 17, 105 S.Ct. at 1047. The exception is no less rarely applied to civil cases. *See Aspen Highlands Skiing Corp. v. Aspen Skiing Co.*, 738 F.2d 1509, 1516 (10 Cir. 1984) (use limited to exceptional cases).

Generally, in raising obvious error, the party who failed to object below has the burden on appeal to show that the error almost surely affected the outcome of the case. *Lusby v. T.G. and Y. Stores, Inc.*, 796 F.2d 1307, 1312 n. 4 (10 Cir.1986). To determine whether obvious error applies in a case, we must review the instruction error in the context of the entire record. *Young*, 105 S.Ct. at 1047.

This case is extraordinary in that not only did plaintiffs fail to request the superseding cause instruction below, or object to its omission, they did not raise, brief, or argue on appeal that the failure to so instruct constituted obvious error. While this court may notice errors affecting substantial rights even though they were not brought to its attention, *see* Rule 52, NDRCrimP and Explanatory Note ["This Rule applies to both the trial courts and the appellate courts."], we should do so only if it is clear that there has been a miscarriage of justice.

I do not believe that the failure to instruct on superseding cause is so fundamental that it created a miscarriage of justice. Let us assume the instruction had been requested and given. On the one hand, the jury may have concluded that William's giving his empty gun to Steven with Steven thereafter surreptitiously placing a bullet in the gun, and returning it to William, who then fired the gun, was not a "foreseeable misuse of the chattel by the person to whom it is entrusted" and therefore not subject to the proscription against superseding cause. On the other hand, if the jury decided that the use by William, the entrustee, was indeed misuse and misuse that was foreseeable, then, following the instruction, the jury would have simply reallocated to Scheels the negligence it attributed to William, the entrustee. Consequently, the 50–50 allocation would remain the same—only the responsible parties would have changed. Because I believe that the jury verdict would not have changed even had the superseding cause instruction been given along with the negligent entrustment instruction, I see no miscarriage of justice in need of remedy. The error is not fundamental.

The trial took three weeks. The record is voluminous. Throughout, the plaintiffs' position was that Scheels was negligent because it violated federal and state law, and because it sold a gun to a child. The entire thrust of plaintiffs' trial strategy was to highlight the negligence of Scheels. The trial court instructed on negligence and also instructed on the violation of statute being evidence of negligence. In finding Scheels negligent, the jury was well apprised of the principles of negligence and I cannot see how an instruction on negligent entrustment would have changed the jury's mind either about the negligence of Scheels or its proximate causation of plaintiffs' damages.

I agree with the majority that the requested negligent entrustment instruction did not apply to defendant Kathryn Boyer. I therefore concur in the affirmance of the judgment as to Kathryn. As to the reversal and remand for a new trial against Scheels, I dissent. I would affirm the judgment in all respects.